[No. H015139. Sixth Dist. May 16, 1996.]

ROBERT L. et al., Petitioners, v.
THE SUPERIOR COURT OF SAN BENITO COUNTY, Respondent;
SAN BENITO COUNTY HEALTH AND HUMAN SERVICES AGENCY
et al., Real Parties in Interest.

## COUNSEL

Margaret Thorning and Stephen E. Engelhardt for Petitioners.

No appearance for Respondent.

Steve Sanders, County Counsel, and Karen Forcum, Deputy County Counsel, for Real Parties in Interest.

## OPINION

**MIHARA, J.**—Robin J. (hereafter the mother) and Robert L. (hereafter the father) each seek a writ overturning the juvenile court's termination of reunification services after a 12-month review hearing and setting of a permanency planning hearing pursuant to Welfare and Institutions Code section 366.26. The mother challenges the sufficiency of the evidence to show that return of the children to her custody would be detrimental, and she claims that the reunification plan was inadequate. The father claims that the juvenile court's order setting a permanency planning hearing must be reversed because the evidence does not support the requisite finding that reasonable reunification services had been offered or provided to him. We deny the petitions.

### FACTS

Jessica L., Robert L. and Carolyn L. are the children of the mother and the father. On January 11, 1995, these three children were detained after they were found living in a very dirty house without food, and the mother admitted that she had spent her welfare money on drinking. Prior to the

children's detention, five months of informal intervention had been attempted and proved unsuccessful because the mother refused to comply with the service plan. A petition was filed alleging that the children came within the jurisdiction of the juvenile court under Welfare and Institutions Code section 300, subdivision (b). The allegations were based on the mother's substance abuse problem, the children's failure to regularly attend school, the mother's conduct in leaving the children with relatives without permission and failing to return for them on schedule, and the mother's past relationship with a man who had subjected the children to violence. The father was incarcerated at the time of children's detention, and the petition alleged that he had failed to provide support for the children. On February 8, 1995, the mother and the father admitted the allegations of the petition. Jessica and Robert were placed with their maternal aunt, and Carolyn was placed with her maternal grandmother.

The children were adjudicated dependent children, and a reunification plan was instituted requiring the mother to remain drug free and allow random drug testing, maintain consistent visitation, obtain substance abuse counseling and attend family counseling. In March 1995, the mother married the father, and the father was sent to state prison to a serve a three-year, eight-month sentence. The mother was incarcerated in March and April 1995 and again in July 1995. The mother was homeless or incarcerated throughout the first six months of the reunification period. She sporadically attended substance abuse counseling. She did not obtain family counseling. Although drug testing had been requested of her, she had only provided a urine sample on one occasion. It had been negative, but the mother had admitted using marijuana in July 1995. The mother did not consistently visit her children. The mother did terminate her abusive relationship, but she continued to drive on a suspended license.

At the six-month review hearing in September 1995, the health and human services agency (hereafter the Agency) recommended that reunification services be continued. The children were continued as dependents, and the reunification plan was modified to include a requirement that the mother maintain substance abuse counseling, refrain from alcohol and substance use, submit to random drug tests, attend Alcoholic Anonymous/Narcotics Anonymous (AA/NA) meetings three times a week, establish a stable living situation, establish a verifiable source of income and track expenditures, attend parenting classes and maintain contact with her social worker. The mother did not respond to the social worker's attempts to contact her on several occasions over the month following the six-month review hearing. She continued substance abuse counseling, but she still did not obtain family counseling. At a status review hearing in October 1995, the mother was

ordered to attend a 30-day residential substance abuse treatment program and submit to chemical testing.

The 12-month review hearing was originally set for February 28, 1996. The Agency recommended that reunification services be terminated. The father remained incarcerated, and the mother had moved in with her parents in December 1995 and remained there. The mother's counsel requested a continuance for a contested hearing, and he asserted that the mother was now willing to enter a residential treatment program. "We could put it on for a review in four weeks. If she is not in the program, she could be terminated then." The review hearing was continued for two weeks to March 13.

A contested 12-month review hearing was held on March 13. The social worker testified that the mother had failed to make any significant progress on the reunification plan, and she could see no substantial probability that the children could be returned to the mother's custody within the remaining four months of the maximum reunification period. The mother had failed to maintain contact with her social worker since the six-month review hearing. The mother refused to cooperate with the social worker in her attempts to gain admittance for the mother into a residential substance abuse treatment program, and the mother did not enter or complete a substance abuse treatment program. She was unwilling to attend a substance abuse treatment program because she did not feel that she had a substance abuse problem. The mother did not submit regularly to substance abuse testing. She did submit to testing on four occasions, but refused or was unavailable on at least twenty occasions. On three of these four occasions, the test indicated that she had been engaging in substance abuse. One test was negative. The mother failed to submit proof that she had regularly attended AA/NA meetings. She had failed to obtain regular verifiable employment or maintain a stable residence. The mother did not attend any parenting classes, but she did continue her substance abuse counseling. Very belatedly, on February 5, 1996, the mother first indicated that she would be willing to attend a residential treatment program.

Because the mother had failed to comply with the reunification plan and had made no progress toward remediating the problems which had led to the removal of the children from her custody, the social worker recommended that reunification be terminated. She opined that the return of the children to the mother would be detrimental to their physical and emotional well-being. The fact that the mother had never made any significant progress on the reunification plan combined with her previous lack of success in meeting the terms of informal service plans indicated that it was "highly unlikely" that the mother could fulfill the terms of the reunification plan within the

remaining four months after many months of refusing to make any attempt to fulfill those terms. The mother's current indication that she was willing to enter a treatment program was not significant because she had also agreed to enter such a program in October 1995 but had failed to do so.

The mother testified that she understood that she needed to enter a residential treatment program. However, she also admitted that she had been through such a program two years before her children were detained, but had returned to drug use thereafter. She expressed a fervent desire to regain custody of her children, and she asserted that she was "a good mother." She admitted that she had agreed to enter a residential treatment program in October 1995 and that she had failed to do so. She was unable to adequately explain why she had not done so or why her current indication that she would do so was any different than her prior unfulfilled commitment to do so. The mother admitted that she had consumed alcohol within the last six weeks.

The father was not present at the 12-month review hearing, but he was represented by counsel. At the conclusion of the hearing, the father's counsel submitted without presenting any evidence or argument. The court found that there was not a substantial probability that the children could be returned to the mother's custody within the next four months. It also found that returning the children to the mother would be detrimental to the children. The court further found that reasonable reunification services had been provided to the mother, and she had failed to make significant progress towards alleviating the causes of the removal of the children from her care. Reunification services were terminated, and a permanency planning hearing was scheduled for May 29, 1996, pursuant to Welfare and Institutions Code section 366.26.

After the juvenile court had made its findings and scheduled a permanency planning hearing, the father's counsel interjected some comments. "In the last social study report, it says that dad has never asked for reunification services, which really isn't true. He's having a total fit about this. He's incarcerated; there is nothing he can do. But he's always been interested in having the kids come with him if this didn't work out with Robin." "And, I mean, the first social study report addressed that, then the second one didn't say much of anything, and now the third one is saying he doesn't want reunification. So I don't know how it got lost." "I hope I don't have to tell him that his rights are suddenly terminated here, because we haven't really talked about that." "I think the problem is that even if he requested [reunification services], he couldn't really get them because he is not here." The father's counsel did not request any action by the juvenile court, and the court took no action in response to her comments.

## DISCUSSION

### I. *The Mother's Petition*

"At the review hearing held 12 months after the initial dispositional hearing, the court shall order the return of the minor to the physical custody of his or her parent or guardian unless, by a preponderance of the evidence, it finds that return of the child would create a substantial risk of detriment to the physical or emotional well-being of the minor. The probation department shall have the burden of establishing that detriment. The court shall also determine whether reasonable services have been provided or offered to the parent or guardian which were designed to aid the parent or guardian to overcome the problems which led to the initial removal and continued custody of the minor. The failure of the parent or guardian to participate regularly in any court-ordered treatment programs shall constitute prima facie evidence that the return would be detrimental. In making its determination, the court shall review the probation officer's report and shall consider the efforts or progress, or both, demonstrated by the parent or guardian and the extent to which he or she cooperated and availed himself or herself of services provided." (Welf. & Inst. Code, § 366.21, subd. (f).)

### A. *Detriment*

█ Our review of the juvenile court's finding that returning the children to the mother's custody would be detrimental is limited to considering whether substantial evidence supports the finding. (*Angela S.* v. *Superior Court* (1995) 36 Cal.App.4th 758, 763 [42 Cal.Rptr.2d 755].) The mother's failure to attend a residential treatment program, as ordered by the court in October 1995, was prima facie evidence that the return of the children to her custody would be detrimental. Her failure to take advantage of the other reunification services offered to her by the Agency confirmed that the dangers which led to the children's detention had not been ameliorated and the children's return to her custody would in fact be detrimental to their physical and emotional well-being. In light of the mother's failure to rebut this prima facie evidence of detriment, the juvenile court's finding is supported by substantial evidence.

### B. *Adequacy of Reunification Plan*

█ The mother also challenges the adequacy of the reunification services provided to her. The finding that reasonable reunification services have been offered must be supported by "clear and convincing evidence." (*In re Monica C.* (1995) 31 Cal.App.4th 296, 306 [36 Cal.Rptr.2d 910].) The

applicable standard of review is sufficiency of the evidence. (*Ibid.*) The first reunification plan responded to the mother's drug problem by requiring her to remain drug free and participate in random drug testing and substance abuse counseling. Her other parental deficiencies were addressed by requirements that she maintain consistent visitation with the children and attend family counseling. After she failed to comply with this reunification plan, it was modified to include a requirement that she attend AA/NA meetings three times a week, establish a stable living situation, establish a verifiable source of income and track expenditures, attend parenting classes and maintain contact with her social worker. The AA/NA meetings were intended to address the mother's drug and alcohol abuse, while the other aspects of the reunification plan were designed to help her provide a stable living environment for the children. When her lack of compliance continued, the reunification plan was augmented with a requirement that she attend a residential treatment program to address her continuing drug and alcohol problems.

The reunification efforts made by the Agency were not unreasonable or inadequate. Each of the requirements of the reunification plans provided to the mother was addressed specifically to the problems which led to the removal of the children from the mother's custody. In spite of the Agency's repeated efforts to assist the mother in overcoming her substance abuse problems and establishing a stable living environment for the children, the mother refused to comply with the reunification plan. The Agency's efforts were adequate and reasonable even if the mother's intransigence made them unsuccessful.

## II.. *The Father's Petition*

▇ The father claims that the juvenile court was not permitted to set a permanency planning hearing because he had never been offered or provided with reunification services. The Agency maintains that it was not required to provide the father with reunification services because he was a noncustodial parent who did not seek custody of the children. The Agency asserts that such parents are not entitled to reunification services. We agree.

At the 12-month review hearing, the juvenile court is required to "determine whether reasonable services have been provided or offered to the parent or guardian which were designed to aid the parent or guardian to overcome the problems which led to the initial removal and continued custody of the minor." (Welf. & Inst. Code, § 366.21, subd. (f).) An order setting a permanency planning hearing must be supported by a finding that "there is clear and convincing evidence that reasonable services have been

provided or offered to the parents." (Welf. & Inst. Code, § 366.21, subd. (g)(3).)

Although the circumstances which led to the removal of the children from the mother's custody did not involve the father, he claims that the juvenile court could not have determined that reasonable services had been provided or offered to him, and therefore its order setting a permanency planning hearing was not supported by the requisite finding. We do not read Welfare and Institutions Code section 366.21 to require a juvenile court to find that reunification services have been offered or provided to a noncustodial parent who never sought custody of the children. Read together, subdivisions (f) and (g) require that a juvenile court find that "reasonable" services have been offered or provided to overcome the problems which prevented a parent from retaining or achieving custody of the child. The services which must be provided to a parent when a child has been removed from parental custody are those services which will enable the parent to regain custody of the child. A noncustodial parent who never seeks custody of the child need not be provided with *any* services because no "reasonable" services could possibly be designed to overcome obstacles which prevent this parent from achieving custody of the child. Reunification services are not intended to overcome a parent's unwillingness to take custody of his or her children. Unless a noncustodial parent is willing to assume custody of the child, the requirement that "reasonable" services be offered or provided does not mandate the provision of any services to this parent, and the juvenile court may properly conclude that "reasonable services" have been offered or provided to the parents and set a permanency planning hearing.

The father also argues that the juvenile court erred in failing to provide reunification services to him because Welfare and Institutions Code section 361.5 mandates the provision of reunification services to "parents." Assuming arguendo that this issue is properly raised in this proceeding, we conclude that the juvenile court was not obligated to offer or provide reunification services to a noncustodial parent who did not seek custody of the children.

There are two relevant statutes. Welfare and Institutions Code section 361.2 deals specifically with the removal of a child from a custodial parent when there also exists a noncustodial parent. "When a court orders removal of a minor pursuant to Section 361, the court shall first determine whether there is a parent of the minor, with whom the minor was not residing at the time that the events or conditions arose that brought the minor within the provisions of Section 300, who desires to assume custody of the minor. If such a parent requests custody the court shall place the minor with the parent

unless it finds that placement with that parent would be detrimental to the minor." (Welf & Inst. Code, § 361.2, subd. (a).) If a minor is placed with a previously noncustodial parent, the juvenile court is not obligated to provide reunification services to the previously custodial parent. (*In re Erika W.* (1994) 28 Cal.App.4th 470, 476 [33 Cal.Rptr.2d 548].) Welfare and Institutions Code section 361.5, subdivision (a) is a general statute dealing with the provision of reunification services after the removal of a child from parental custody. "[W]henever a minor is removed from a parent's or guardian's custody, the juvenile court shall order the probation officer to provide child welfare services to the minor and the minor's parents or guardians *for the purpose of facilitating reunification of the family* within a maximum time period not to exceed 12 months." (Welf. & Inst. Code, § 361.5, subd. (a), italics added.) Welfare and Institutions Code sections 361.5 and 361.2 were simultaneously enacted by the Legislature and must be construed as parts of a single legislative scheme. (*In re Erika W.*, *supra*, at p. 475.)

The father claims that Welfare and Institutions Code section 361.5 requires the provision of reunification services to all "parents." As he is a parent and services were not provided, he claims that the statute was violated. We disagree. Section 361.5 requires the provision of services to parents "for the purpose of facilitating reunification of the family . . . ." The provision of services to a noncustodial parent who does not seek custody of the children does not in any way serve this purpose. The fact that section 361.2 permits the juvenile court to place a child with a previously noncustodial parent and deny services to the previously custodial parent demonstrates that reunification services are not required to be provided to a parent who will not be taking custody of the children. This integrated statutory scheme reflects the Legislature's desire to provide services to parents only where those services will facilitate the return of the children to parental custody. Provision of services to a noncustodial parent who does not seek custody will not serve this purpose, and therefore such services are not required to be offered or provided.

Our conclusion is supported by the Fourth District Court of Appeal's decision in *In re Terry H.* (1994) 27 Cal.App.4th 1847 [34 Cal.Rptr.2d 271] that a noncustodial parent who does not seek custody of the children is not entitled to reunification services. "The basis of reunification is protecting dependent children by identifying and ameliorating the factors that placed them at risk in the home. Where the risk arose out of the action or inaction of one parent, it makes sense to provide reunification services to that parent. Where the noncustodial parent does not seek custody, there is no need to address any risks that might arise from placement with him." (*Id.* at p. 1854.) "Section 361.5 is a generic statute addressing a basic situation in juvenile

dependency actions, i.e., the removal of a child from the caretaker's custody and the goal of reunifying the child with the caretaker through the provision of reunification services. It does not, by its terms, encompass the situation of the noncustodial parent. Section 361.2 addresses the situation of the noncustodial parent and whether reunification services should be provided to that parent." (*Id.* at p. 1856.)

The father claims that he cannot be denied reunification services simply because he failed to request such services since there is no statutory requirement that he request services. As we have already explained, the statutes contemplate that a noncustodial parent is not entitled to reunification services unless he or she requests custody of the children. (Welf. & Inst. Code, § 361.2, subd. (a).) As the father never sought custody of the children, the juvenile court was not required to provide him with reunification services.

The father asserts in his petition that he "has always indicated that if the minor children cannot be returned to the custody of their mother, then he will step in and take custody if possible." He does not cite to the record to support this statement, and our review of the entire record reveals that it contains no support for this statement. The initial social study reflected that the father "continues to be involved with his children as much as is possible." This is the most positive statement about the father's involvement with the children that appears in the record. This social study indicated that the father had only lived with the mother and the children "sporadically" prior to his separation from the mother 18 months before the children's detention. At the time of the detention, the father was in jail. The initial social study also noted that "if [the father] requests the children live with him," a reunification plan would be necessary. The only conclusion that can be reached from this statement is that the father had not requested custody of the children. The juvenile court so found at the dispositional hearing, and the father did not contest this finding. By the time of the six-month review hearing, the father had been committed to state prison for a term which would exceed the maximum reunification period. The social worker's report at the time of the 12-month review hearing noted that the father was still incarcerated and "has not requested reunification services with the children." At the contested 12-month review hearing, the father's counsel did not present any evidence or argument. It was only *after* the juvenile court had made the order which the father attacks in this proceeding that his counsel made some comments regarding her opinion about the father's desires. These statements are completely irrelevant since they occurred after the order which the father seeks to overturn. The record reflects that the father never sought custody of the children.

The father's final argument is frivolous. He argues that "[t]he specific findings required by section 366.26(c)(1) that will support termination of

petitioner's parental rights at a section 366.26 hearing are missing." The father's parental rights have not been terminated. The juvenile court has merely ordered that a permanency planning hearing shall be held. It is at that hearing that the court may decide whether or not parental rights should be terminated.

CONCLUSION

The petitions are denied.

Cottle, P. J., and Bamattre-Manoukian, J., concurred.