Filed 12/2/13  Eric S. v. Superior Court CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| ERIC S., | D064463 |
| Petitioner, | |
| v. | (San Diego County Super. Ct. No. SJ12789) |
| THE SUPERIOR COURT OF SAN DIEGO COUNTY, | |
| Respondent; | |
| SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY, | |
| Real Party in Interest. | |

Proceedings for extraordinary relief after reference to a Welfare and Institutions Code section 366.26 hearing.  Garry G. Haehnle, Judge.  Petition denied; request for stay denied.

Dependency Legal Group of San Diego and John P. McCurley for Petitioner.

Thomas E. Montgomery, County Counsel, John E. Philips, Chief Deputy County Counsel and Paula J. Roach, Deputy County Counsel, for Real Party in Interest San Diego County Health and Human Services Agency.

Dependency Legal Group of San Diego and Amanda J. Gonzales for Real Party in Interest Chloe S., a Minor.

Eric S. seeks writ review of juvenile court orders granting a writ petition filed by his daughter, Chloe S., under Welfare and Institutions Code[1] section 388, subdivision (c)(1)B), terminating his reunification services and referring the matter to a section 366.26 hearing. We deny the petition and deny the request for a stay of the proceedings.

FACTUAL AND PROCEDURAL BACKGROUND

On July 30, 2012, the San Diego County Health and Human Services Agency (the Agency) petitioned under section 300, subdivision (b) on behalf of five-year-old Chloe, alleging her mother, C.A., was mentally ill and incapable of providing regular care.

The social worker reported Eric lives in Los Angeles County and had a voluntary services case there due to domestic violence. Eric admitted domestic violence in his relationships with his current girlfriend and with C.A., and admitted he had been jailed and was currently on probation for domestic violence. He had not fully completed his voluntary services case in Los Angeles regarding two other children. He admitted

---

1      Statutory references are to the Welfare and Institutions Code.

2

smoking marijuana and said he had a marijuana card. He indicated he was interested in having Chloe placed with him.

At the jurisdictional/dispositional hearing the court ordered custody removed from the parents, declared Chloe a dependent child of the court, ordered reunification services for C.A. and Eric, and ordered Chloe placed in relative care. She was placed with her maternal grandmother (the grandmother).

Chloe's therapist reported Chloe showed anxiety, fear, grief and loss, guardedness, avoidance and over-compliance caused by her exposure to domestic violence and C.A.'s drug use and neglect. The therapist said Chloe was afraid of being removed from the grandmother and said she wanted to return to C.A. when it was safe.

During the first six months of the dependency case, Eric did not travel to San Diego to see Chloe. Chloe was indifferent to his telephone calls and said she did not know him and had nothing to say to him. Eric said he wanted to work on developing a bond with Chloe and would like the Agency to help by facilitating visits.

At the six-month-review hearing on March 27, 2013, the court ordered continued reunification services and set a 12-month hearing.

On June 21, 2013, Chloe's counsel petitioned under section 388, subdivision (c)(1)B), requesting the court terminate Eric's and C.A.'s reunification services. The petition stated Chloe needs stability and permanency, C.A. no longer wished to participate in services, Eric's contact with Chloe was inconsistent and limited, and Chloe sometimes said she did not want to talk with him.

3

Chloe's therapist reported Chloe's fear and insecurity had lessened through therapy and she was thriving in the grandmother's care. The social worker said Eric had made only minimal progress since the time of the six-month review hearing. He had come to San Diego to visit Chloe only twice, and said he was working on obtaining more stable transportation so he could visit more often. At first, after the six-month hearing, he had called her every week, but the frequency of his calls soon decreased. He said he did not want to disrupt Chloe's placement with the grandmother, but wanted to continue to be able to visit her.

The court ordered an evidentiary hearing on Chloe's petition. At the hearing on the petition on August 9, 2013, the parties stipulated that if Eric were to testify, he would say he had his first in-person visit with Chloe in March 2013 and a second visit in April. A third visit did not take place because he lacked transportation. He would say he had called multiple times after his first visit, but was uncomfortable leaving messages because of his relationship with the grandmother. He had problems reaching Chloe and did not believe the grandmother would facilitate contact with her.

If the social worker were to testify, she would state Chloe did not appear to be afraid of Eric, but to enjoy her two visits with him. She would say Chloe told her that at times she did not want to talk with Eric because she was busy and she did not know him or know what to say. The social worker suggested topics to talk about and Chloe discussed these issues with her therapist. The social worker would say Eric did not ask for assistance with transportation, and every time he requested her help, she followed up on his request.

4

The parties stipulated that if the grandmother were to testify, she would say Eric telephoned about once each month, he did not leave messages, and, if she saw he had called, she would ask Chloe if she would like to call him back. She would say Eric last called on Fathers' Day and he never sent any letters.

After considering the evidence and argument by counsel, the court found Eric had been provided with reasonable services and he had made minimal efforts to contact Chloe. It found because of his lack of action, it was reasonably likely that reunification would not occur by the 12-month date. It terminated services and set a section 366.26 hearing.

Eric petitioned for review of the juvenile court's orders. (§ 366.26, subd. (*l*); Cal. Rules of Court, rule 8.452.) This court issued an order to show cause, the Agency responded and the parties waived oral argument.

## DISCUSSION

Eric contends the court abused its discretion by holding a hearing on Chloe's petition. He also argues there was insufficient evidence to support the order granting the petition and insufficient evidence to support finding he had failed to visit Chloe, and the court erred and violated his right to due process by granting the petition without finding by clear and convincing evidence that placing Chloe with him would be detrimental. He further claims he did not receive reasonable reunification services, and the court erred by not making a finding regarding Chloe's best interests.

A. *Legal Principles*

When a juvenile court removes a child who is three years old or older from parental custody, the parents are generally entitled to 12 months of reunification services. (§§ 361.5, subd. (a)(1)(A), 366.21, subd. (f).) However, a party may petition under section 388, subdivision (c) for the court to terminate services before the 12-month date. Section 388, subdivisions (c)(1)(B) and (c)(3) provide the court shall terminate reunification services if it finds the actions or inactions of the parent have created a substantial likelihood that reunification will not occur and that reasonable services were offered or provided. In making its determination, the court considers factors such as the parent's failure to visit the child or participate regularly and make substantive progress in a court-ordered treatment plan. (§ 388, subd. (c)(1)(B); *In re Katelynn Y.* (2012) 209 Cal.App.4th 871, 880.)

B. *Application*

1. *Prima Facie Finding on the Section 388 Petition*

Eric first contends the court abused its discretion by holding a hearing on the section 388 petition because Chloe's counsel did not make a prima facie showing. This argument is moot because the hearing was held and the court made a determination on the evidence. It is the court's decision from the evidentiary hearing that affects Eric's rights, not the decision to hold the hearing. (See *In re Richard D.* (1972) 23 Cal.App.3d 592, 595.)

2. *Sufficiency of the Evidence to Grant the Petition*

Eric contends insufficient evidence supports the court's decision to grant the petition. He argues there was not sufficient evidence to support finding he had failed to visit Chloe in that he called her at least once each month and twice visited her in person.

Eric's argument lacks merit. The statute does not require, as he suggests, that the parent completely fail to visit, but that his or her actions or inactions have created a substantial likelihood that reunification will not occur. Eric had only a minimal relationship with Chloe and he did very little during the dependency period to remedy this situation. During the first six months of the case, he had no face-to-face visits with Chloe and during the second reporting period had only two in-person visits, and, according to the grandmother, called only a handful of times and did not leave messages. He last talked with Chloe in June, almost two months before the hearing on the petition.

At the six-month hearing the court commented that the case was not progressing as it should. Eric's counsel said Eric was aware of the problem and that she had discussed with him and his relatives the urgent need for Eric to take a more proactive role. She reported Eric understood and said he would take more initiative to visit and call Chloe. In the July 2013 addendum report, the social worker said that at first after the six-month review hearing, Eric followed through with his promise to make a greater effort to come to San Diego to visit and be more consistent with telephone calls, but "unfortunately, this pattern did not last too long, and it became difficult for [Eric] to continue the initial forward progress." Moreover, Eric did not bring his transportation difficulties to the Agency's attention until about one month before the hearing. His

argument he did not leave messages because of his poor relationship with the grandmother is not persuasive. If he wanted a relationship with Chloe it was his responsibility to take the initiative to help it happen. Substantial evidence supports finding that Eric did not have regular, consistent visitation with Chloe and made only minimal efforts to contact her, and there was not a substantial likelihood of her returning to parental custody by the 12-month date.

3. *Termination of Reunification Services without a Finding of Detriment*

Eric asserts because he was the non-offending, non-custodial parent in this case, the court violated his due process rights by terminating his reunification services and setting a section 366.26 hearing without finding by clear and convincing evidence that placing Chloe with him would be detrimental to her safety and well being.

The court complied with the substantive and procedural requirements by finding at the six-month review hearing by a preponderance of the evidence that returning Chloe to parental custody would create a substantial risk of detriment to her physical and emotional well being. This finding was supported by substantial evidence. In addition the court found by clear and convincing evidence that Eric's inaction created a substantial likelihood that reunification would not occur. Eric had little relationship with Chloe and, although he first indicated he wanted placement, he never asked for her to be placed with him, but said his main concern was that Chloe be with family and agreed she should be placed with the grandmother as long as he could visit her. No further finding of detriment at the hearing on the section 388 petition was required. (§ 361.2, subd. (a), see *Robert L. v. Superior Court* (1996) 45 Cal.App.4th 619, 628.)

8

Eric's reliance on *In re Manolito L.* (2001) 90 Cal.App.4th 753 is misplaced. In *In re Manolito L.,* the reviewing court held that when a social services agency petitions under section 388, subdivision (a) to suspend a parent's visitation pending a section 366.26 hearing, the court must make a finding of detriment. (*In re Manolito L., supra,* 90 Cal.App.4th at pp. 759-760.) Section 366.21, subdivision (h) requires "[t]he court shall continue to permit the parent . . . to visit the child pending the [section 366.26] hearing unless it finds that visitation would be detrimental to the child." This holding is inapplicable here because this case does not involve a termination of visitation. The requirement of a finding of detriment also is not required as Eric suggests by the California Rules of Court. Eric has not shown a denial of due process.

4. *Reasonable Reunification Services*

Eric's argument that he did not receive reasonable reunification services is unpersuasive. Substantial evidence supports the court's finding that reasonable reunification services were provided.

Eric argues that although conjoint therapy was part of his services plan, this component of the plan was not employed. However, conjoint therapy could not be implemented until the social worker and Chloe's therapist determined it was appropriate. Chloe was emotionally fragile and was in therapy because of the trauma she had experienced in C.A.'s care. She feared she would be removed from the grandmother, and Eric had had little contact or communication with her before the time of the hearing. Conjoint therapy would not have been appropriate. Further, Eric had great difficulty travelling to San Diego to visit and there was no showing that he would have had more

9

success in attending conjoint therapy sessions. Substantial evidence supports the finding that Eric received or was offered reasonable reunification services.

5. *Lack of a Finding as to Chloe's Best Interests*

We also reject Eric's argument that the court erred by not making a finding as to Chloe's best interests. It can be implied that the court considered Chloe's best interests in making its decision. The court commented on the absence of a bond between Chloe and Eric and on Eric's failure to stay in contact with her and develop a relationship. Chloe needed stability and a permanent home and was making progress in therapy to overcome the trauma she had endured in the C.A.'s care. Eric had not shown he was interested in being her full-time parent. The court's comments showed it took into account Chloe's best interests in making its decision.

Substantial evidence supports the court's findings. Eric has not shown error by the court granting Chloe's petition under section 388, subdivision (c)(1)(B), terminating reunification services and setting a section 366.26 hearing.

DISPOSITION

The petition is denied.  The request for stay is denied.


                                        NARES, J.

WE CONCUR:


BENKE, Acting P.J.


AARON, J.


11