Filed 2/6/14  In re K.W. CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| In re K.W. et al., Persons Coming Under the Juvenile Court Law. | C073743 |
| SACRAMENTO COUNTY DEPARTMENT OF HEALTH AND HUMAN SERVICES,<br><br>    Plaintiff and Respondent,<br><br>  v.<br><br>A.W.,<br><br>    Defendant and Appellant. | (Super. Ct. Nos. JD229602 & JD229603) |

Adrian W., presumed father of minors K.W. and J.W., appeals from the juvenile court's orders terminating parental rights. (Welf. & Inst. Code, [1] § 366.26, 395.) He contends the juvenile court erred by terminating his parental rights without finding

---

[1] Further undesignated statutory references are to the Welfare and Institutions Code.

1

detriment by clear and convincing evidence, or, using alternative terminology, without finding him "an unfit parent." As we will explain, because we agree that the required finding of detriment by clear and convincing evidence does not appear in the record, we must reverse and remand for the juvenile court to make the appropriate finding.

## BACKGROUND

This is father's third appeal in his children's dependency case. Respondent Sacramento County Department of Health and Human Services ("DHHS") has asked us to take judicial notice of our unpublished opinion affirming the juvenile court's orders denying father's petitions for modification, *In re K.W.* (June 26, 2013, C071770) [nonpub. opn.]. Father did not oppose the request; we treat the request as a motion to augment the record and grant the motion.[2] Father's remaining appeal (case No. C072101) is currently pending in this court.

From our earlier opinion, we glean the following pertinent facts: In 2009, after DHHS filed a section 300 petition against J.W. and K.W., the juvenile court found father presumed. Father was incarcerated. When he initially appeared, he indicated through counsel that he was not seeking placement or services, and the court designated him a *Robert L.* father--a "non-offending, non-custodial parent not seeking services or placement of the children."[3] The court found visitation with father would jeopardize the minors' safety.

---

[2] We do the same with the reporter's transcript of the January 14, 2010 juvenile court hearing and the social worker's April 15, 2011 progress report (from the clerk's transcript in *In re K.W., supra*, C071770), both also subjects of DHHS's request. We previously granted father's request to take judicial notice of both parties' briefing in the second of father's three appeals, case No. C072101.

[3] See *Robert L. v. Superior Court* (1996) 45 Cal.App.4th 619 (*Robert L.*). We note that father did not, however, execute the *written* waiver of reunification services (JV-195), as required for a valid waiver by section 361.5, subdivision (b)(14). Accordingly, we do not address whether the advisements contained in the written waiver form would have

2

In January 2010, father's counsel inquired about reunification services and requested visitation. The juvenile court reaffirmed its previous orders and noted any change to those orders would require that father file a petition for modification.

Father was briefly released from custody in January 2011 and asked to visit the minors, who were by then in foster care. The juvenile court ordered continued letter contact only. In April, the court held a progress hearing to address visits for father. By then, father was back in custody, and the court ordered no change to the current orders.

In May, father was released from custody and, again, requested visitation. He reported he was employed as a painter and provided proof of attendance of several classes he took while incarcerated, including anger management and domestic violence, substance abuse, and parenting. DHHS recommended supervised visits and filed a modification petition, but later withdrew the request.

In August 2011, father filed petitions to modify requesting reunification services and a general visitation order. In support of his petitions, he stated in pertinent part: "The father's position is that having a goal of return home to his care is the best permanent plan for the children. Similarly, it is in the best interest of the children to see and have a relationship with their father." The juvenile court denied the petitions without a hearing, finding they did not state new evidence or a change of circumstances and did not promote the minors' best interests.

In August 2012, father filed new petitions to modify requesting reunification services and visitation, and a hearing. He stated in pertinent part: "At the time no reunification services were ordered, [he] was incarcerated. While incarcerated, he participated successfully in many services. [] Since he has been released, he has worked

satisfied due process requirements or, if not, at least rendered the finding's omission harmless beyond a reasonable doubt.

3

consistently and led a stable lifestyle." He added that he was willing and able to "parent" the minors, and that he was "able to provide care" for them.

The juvenile court (Peterson, J.) denied the petitions without a hearing. We affirmed that order, holding (in summary) that the juvenile court did not abuse its discretion in finding the petition did not allege changed circumstances and that the modification father sought was not in the minors' best interests. (*In re K.W., supra*, C071770, slip opn. at pp. 6-8.)

In August 2012, DHHS again recommended visits for father. After a hearing, the juvenile court denied father's request for visits and maintained the no-contact order, finding as to J.W. that "it would be detrimental for [J.W.] to reestablish a relationship only then to be looking at terminating the relationship." The court set a selection and implementation hearing. Father appealed the court's order denying him visits; that appeal is currently pending in this court, case No. C072101.

After multiple continuances, a contested selection and implementation hearing for K.W. and J.W. commenced in April 2013. Father joined in mother's assertion of the beneficial parent-child relationship exception to adoption and in a third sibling's relationship exception to adoption. He also renewed his objection to the no-contact orders.

On May 2, 2013, the juvenile court found the minors adoptable, found no exception to adoption applied, and terminated parental rights as to both minors. Father filed a timely notice of appeal.

**DISCUSSION**

Father contends the juvenile court erred by terminating his parental rights without finding detriment by clear and convincing evidence. DHHS responds first by arguing the finding was not required, and then by attempting to argue the finding was made--first expressly, then impliedly--and that any omission was harmless error. Finally, DHHS asserts forfeiture and labels father's appeal as untimely. As we explain *post*, the claim is

4

not forfeited and it is timely; further, the finding is constitutionally required and is not apparent from the record before us. Accordingly, we are compelled to reverse and remand.

I

*Forfeiture and Timeliness*

DHHS contends that father forfeited the issue by failing to raise it in the juvenile court. Although DHHS makes this argument at the end of its briefing, we address it first and disagree.

The petition did not name father, and the children were never removed from his care. He neither sought services, nor was he bypassed from receiving them. Although his later requests for services, made in petitions to modify, were denied, the findings made pursuant to those (§ 388) proceedings were completely different from those required to remove his children from his custody or to terminate services or deny services at the outset.

In completing the relevant forms JV-320, on J.W.'s form the juvenile court indicated by checking the applicable box that as to *father* as well as mother: "the court previously made a finding denying or terminating reunification services under W&I section 361.5, 366.21, 366.22, 366.25, 727.2, or 727.3." But because father was designated *Robert L.*, and only sought services later through section 388 petitions, there was never a finding made as to him under these sections, which require a finding of detriment by clear and convincing evidence.[4]

Although father had filed petitions for modification, seeking visitation and services, these petitions were denied without evidentiary hearings, as set forth *ante*. DHHS never made allegations regarding father's parental fitness, thus father never had

---

[4] Father's name does not even appear on K.W.'s JV-320 and no findings are made specifically as to him on that form.

5

notice of precisely which facts DHHS would rely on to show detriment by clear and convincing evidence or the opportunity to present evidence regarding those facts. "[W]e are reluctant to enforce the waiver rule when it conflicts with due process." (*In re Frank R.* (2011) 192 Cal.App.4th 532, 539.)

DHHS adds that father's appeal is untimely because he did not appeal the dispositional order. But we have already held that the claim father now raises was not ripe until the juvenile court terminated his parental rights--in fact, we declined to hear it earlier. (*In re K.W., supra*, C071770, slip opn. at p. 9.)

We therefore proceed to the merits of father's claim.

II

*Statutory Requirements*

Section 361.2, subdivision (a) provides: "When a court orders removal of a child pursuant to Section 361, the court shall first determine whether there is a parent of the child, with whom the child was not residing at the time that the events or conditions arose that brought the child within the provisions of Section 300, who desires to assume custody of the child. If that parent requests custody, the court shall place the child with the parent unless it finds that placement with that parent would be detrimental to the safety, protection, or physical or emotional well-being of the child." In order to deny placement, the court must find detriment by clear and convincing evidence. (*In re Abram L.* (2013) 219 Cal.App.4th 452, 461.)

Father is a non-custodial, non-offending parent. *Had he sought custody* of his children at any point in the proceedings, the juvenile court, in applying section 361.2, would have been required to find detriment to the minors, by clear and convincing evidence, in order to avoid placing them with him.[5] We agree with DHHS that father at

---

[5] According to reports prepared by social workers, father has a significant criminal history that includes violence against the minors' mother and multiple felony and

6

no time sought custody, despite his attempts on appeal to characterize his requests for services and visits as the equivalent.

DHHS argues that section 361.2 requires a detriment finding for non-custodial parents only when the non-custodial parent seeks custody. While technically true, this argument ignores the constitutional requirements. As we discuss immediately *post*, section 361.2 does not supersede, circumvent, or in any way diminish the due process requirement that the court find detriment by clear and convincing evidence at some point before terminating parental rights, regardless of whether the parent seeks custody.

III

*Due Process Requirements*

A. *The Law*

"Parents have a fundamental interest in the care, companionship, and custody of their children. (*Santosky v. Kramer* (1982) 455 U.S. 745, 758 [71 L.Ed.2d 599] (*Santosky*).) *Santosky* establishes minimal due process requirements in the context of state dependency proceedings. 'Before a State may sever completely and irrevocably the rights of parents in their natural child, due process requires that the State support its allegations *by at least clear and convincing evidence*.' [Citation.] 'After the State has established parental unfitness at that initial proceeding, the court may assume at the *dispositional* stage that the interests of the child and the natural parents do diverge.' [Citation.] 'But until the State proves parental unfitness, the child and his parents share a vital interest in preventing erroneous termination of their natural relationship.' [Citation.]

"California's dependency system comports with *Santosky*'s requirements because, by the time parental rights are terminated at a section 366.26 hearing, the juvenile court *must* have made prior findings that the parent was unfit. (*Cynthia D. v. Superior Court*

---

misdemeanor convictions, and is required by Penal Code section 290 to register as a sex offender for a 1981 rape conviction.

(1993) 5 Cal.4th 242, 254.)  'The number and quality of the judicial findings that are necessary preconditions to termination convey very powerfully to the fact finder the subjective certainty about parental unfitness and detriment required before the court may even consider ending the relationship between natural parent and child.'  [Citation.]  The linchpin to the constitutionality of the section 366.26 hearing is that prior determinations ensure '*the evidence of detriment is already so clear and convincing that more cannot be required without prejudice to the interests of the adoptable child*, with which the state must align itself.'"  (*In re Gladys L.* (2006) 141 Cal.App.4th 845, 848, some italics added; accord, *In re Frank R., supra* 192 Cal.App.4th at p. 537.)

California's dependency scheme does not use the term "parental unfitness," requiring instead that the juvenile court find that awarding custody of a dependent child to a parent would be "detrimental to the child."  (*In re Dakota H*. (2005) 132 Cal.App.4th 212, 224, fn. 3.)

B.  *Analysis*

Presumably because father sought neither custody nor services at the beginning of the dependency case, did not request anything other than visitation until the case was well underway, and never did seek custody, the juvenile court did not double back at some point before terminating his parental rights and make the necessary finding of detriment by clear and convincing evidence.  Nor did the juvenile court have any occasion to take evidence on father's parental fitness or lack of fitness, as father was not named in the petition and his motions to modify were denied without evidentiary hearing.  Thus father's parental rights were terminated without the benefit of specific allegations of parental unfitness, the chance to rebut the allegations, or the requisite finding.

In *In re Frank R., supra,* 192 Cal.App.4th 532, the appellate court held the failure to find detriment by clear and convincing evidence was reversible error.  There, like here, the children were removed from mother's custody and the presumed father was found non-offending.  (*In re Frank R., supra* 192 Cal.App.4th at p. 535).  Father did not seek

8

custody or services, and was awarded visitation but visited only sporadically. (*In re Frank R., supra,* at pp. 535-336.) In reversing the termination of his parental rights, the court observed that "although there may be valid bases for the juvenile court to make a finding of father's unfitness, the court never made that finding, let alone by the required clear and convincing standard. We may not make that finding here or infer such a finding." (*Id*. at p. 539.) Although DHHS attempts to distinguish *In re Frank R.*, and then questions its rationale, we find it on point and persuasive.

Here, although DHHS argues that the requisite finding was, in fact, made as to father "at three review hearings" where the court used the plural "parents," it admits that the juvenile court did not specify that it was applying the clear and convincing standard of proof. Setting aside the fact that DHHS admits the findings were regarding potential return of the child to parental (mother's) custody and (mother's) progress in services--as custody and services were two things father never had--we see no reason why the juvenile court *would* apply this higher standard at these review hearings, let alone any evidence that it did. Alarmingly, DHHS asks that we infer that the findings were by clear and convincing evidence from the fact that the court made the findings *three different times*. This we cannot do.

DHHS adds that "an implied finding of risk of detriment is virtually compelled by the record in this case," conflating its argument for an implied finding with an argument for harmless error. Although we do not disagree that father may have an uphill battle in establishing parental fitness, we do not function as the petitioner, nor as the fact-finder. Father was neither accused of parental unfitness in the juvenile court, nor was he afforded a chance to demonstrate his fitness, if he could. As we have touched on *ante*, finding father unfit at this juncture would deny him notice of, and an opportunity to respond to, specific charges against him.

For this same reason, we decline DHHS's invitation to find the failure to make the requisite finding "clearly harmless." Although DHHS argues that "it is highly

improbable that a more favorable result would have been reached in the absence of error," it applies the wrong standard. Harmlessness in constitutional errors such as this one necessitates a showing beyond a reasonable doubt. (See *Chapman v. California* (1967) 386 U.S. 18, 24 [17 L.Ed.2d 705, 710-711.]) Here, because of the lack of any accusation as well as opportunity to rebut the proof supporting it, we cannot say the error was harmless beyond a reasonable doubt.

## DISPOSITION

The orders terminating parental rights are reversed. The matter is remanded for hearing in the juvenile court. If the juvenile court determines, by clear and convincing evidence, that awarding custody of the minors to father would be detrimental to the minors, the orders shall be reinstated. If a different determination is made, the orders shall remain vacated and the juvenile court shall proceed accordingly.


                                                    DUARTE             , J.



We concur:

s

        BLEASE           , Acting P. J.



        NICHOLSON       , J.




10