Filed 4/21/26  In re E.A. CA2/4

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(a). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115(a).

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| In re E.A., et al., Persons Coming Under the Juvenile Court Law. | B345875 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>        Plaintiff and Respondent,<br><br>    v.<br><br>E.J.,<br><br>        Defendant and Appellant. | Los Angeles County Super. Ct. No. 18CCJP01289 |

APPEAL from orders of the Superior Court of Los Angeles County, Stephen C. Marpet, Judge.  Affirmed.

Jack A. Love, under appointment by the Court of Appeal, for Defendant and Appellant.

Dawyn R. Harrison, County Counsel, Kim Nemoy, Assistant County Counsel, Jane Kwon, Principal Deputy County Counsel, for Plaintiff and Respondent.

E.J. (mother) appeals from the juvenile court's orders issued at the six-month review hearing. The orders denied her request to return her children, E.A. (born March 2020) and A.G. (born July 2024), to her custody. The juvenile court found that returning the children to mother's custody would create a substantial risk of detriment to their safety, protection, or physical or emotional well-being. Mother contends these findings are unsupported by substantial evidence. We affirm the juvenile court's orders.

## BACKGROUND

Mother has been convicted of multiple, violent, criminal offenses. She has also been the subject of numerous juvenile dependency petitions regarding her older daughter, T.J. The parties are familiar with the details of this history and we shall not recite them here.

The present case arises from incidents that occurred in July of 2024. On July 11, mother did not allow medical staff to treat A.G., and displayed bizarre and erratic behaviors, paranoia, and delusions and disorganized thought patterns. On July 12, she was placed on an involuntary psychiatric hold. On July 14, when a social worker was in a car with the children, mother blocked the driveway to prevent the car from leaving, climbed on top of the roof, and began stomping.

On September 2, 2024, mother was arrested for assault with deadly weapon with force (no firearm) with great bodily injury. Mother reported to a social worker at the Department of Children and Family Services (DCFS) that she "beat up" her neighbor for coming to her home and accusing her of being involved with the neighbor's "significant other."

2

On September 10, 2024, the juvenile court sustained five counts in a petition brought by the DCFS on behalf of E.A. and A.G.  With respect to mother, the juvenile court sustained allegations that mother's violent and assaultive behavior endangers the children's physical health and safety and places the children at risk of serious physical harm and danger.  The court further sustained allegations that mother was incapable of providing regular care for the children due to her mental and emotional problems, failure to participate in consistent mental health treatment, and failure to take her psychotropic medication as prescribed.

The juvenile court ordered mother to participate in the following services: random, weekly drug and alcohol testing with "[m]other's marijuana levels to go down and out within 60 days"; a 52-week anger management program; developmentally appropriate parenting classes; and individual counseling to address case issues, including anger management and substance abuse/use with a therapist approved by DCFS.

E.A. was placed with his paternal grandmother, R.A, and A.G. was placed with a non-related extended family member, D.W.

At the initial six-month review hearing on March 11, 2025, the juvenile court, at the request of mother, set a contested hearing regarding liberalization of mother's visits with the children and/or return of the children to her custody.  The juvenile court ordered that mother's visits occur at least twice a week for two hours in either a public setting or DCFS approved setting.  It further ordered DCFS to continue to assist mother in her counseling referrals including looking into funds to help mother complete her anger management program.

On April 23, 2025, the juvenile court held the contested six-month review hearing. After hearing mother's testimony, reviewing documentary evidence submitted by DCFS and mother, and hearing oral argument, the juvenile court found continued jurisdiction was necessary. The court found mother had not substantially complied with her court-ordered case plan, and return of the children to the physical custody of mother would create a substantial risk of detriment to the children. It noted that mother still had not stopped using marijuana and "mother just enrolled in her [anger management] program for the reason why we're here, which is anger management. So I can't liberalize her visits. There is just not sufficient evidence today." The court then ordered further family reunification services to mother, and set a twelve-month review hearing.

Mother timely appealed.

## DISCUSSION

Mother challenges the juvenile court's finding that, at the time of the contested six-month review hearing, it would have been detrimental to return the children to her custody.

At a six-month review hearing, "the court shall order the return of the child to the physical custody of their parent or legal guardian unless the court finds, by a preponderance of the evidence, that the return of the child to their parent or legal guardian would create a substantial risk of detriment to the safety, protection, or physical or emotional well-being of the child." (Welf. & Inst. Code, § 366.21, subd. (e)(1).) In making its determination, the court "shall review and consider the social worker's report and recommendations" and "the efforts or progress, or both, demonstrated by the parent or legal guardian

4

and the extent to which they availed themselves of services provided." (*Ibid*.)

Our review of the juvenile court's finding of detriment is limited. We consider only if substantial evidence supports the finding. (*Robert L. v. Superior Court* (1996) 45 Cal.App.4th 619, 625.) We review the record in the light most favorable to the court's determinations, drawing all reasonable inferences in support of the court's finding. (*In re I.J.* (2013) 56 Cal.4th 766, 773.) In conducting this analysis, "[w]e do not reweigh the evidence, evaluate the credibility of witnesses, or resolve evidentiary conflicts." (*In re Dakota H.* (2005) 132 Cal.App.4th 212, 228 (*In re Dakota H.*).) We affirm the juvenile court's finding so long as a reasonable trier of fact could have reached it. (*In re I.J.*, at p. 773.)

As discussed above, the issues that led to the children's detention included mother's violent and assaultive behavior, as well as mother's mental and emotional problems. To address those concerns, the trial court ordered, among other things, that mother enroll in individual counseling for anger management and substance abuse/use, and complete a 52-week anger management program.

Although mother was participating in individual counseling,[1] at the time of the contested six-month review hearing, she had just enrolled—and thus, had not started

---

[1] DCFS reported that, as of February 5, 2024, mother was still building rapport with her individual therapist and she had not participated in individual therapy for a long enough period of time to adequately address her case issues. Mother's participation in individual counseling was inconsistent according to her therapist.

attending—a 52-week anger management program. She only recently enrolled in an eight-week anger management program, and, as of March 20, 2025, participated in two of the three sessions that had occurred.

Critically, the March 11, 2025, status report submitted by DCFS indicated mother's anger issues remained. For example, according to DCFS, on multiple occasions, mother had become agitated and confrontational when speaking to the social worker over the phone and in person. DCFS also reported that mother continued to have issues with caregivers, including sending threatening text messages to paternal grandmother. During a meeting with the social workers and mother, when a social worker attempted to explain the visitor guidelines to mother and provide a copy of the guidelines mother had previously signed, mother "snatched the form, ripped the form and threw the form" at the social worker. Mother then continued to disrespect the social worker as she left the room using profanity and stating she was going to have both social workers "fired from the department." DCFS further reported that mother acknowledged she suffers from mental health issues, but "she states that she does not need medication to stabilize her mood."

In arguing that substantial evidence does not support the juvenile court's finding of detriment, mother asserts she completed her parenting program, she was still participating in the individual therapy that she started four months before the six-month review hearing, and she was drug testing (but with some positive tests for marijuana). Mother also points out that, according to DCFS, she has demonstrated patience, attentiveness, and appropriate redirection with the children during her monitored visits. While we acknowledge mother has

6

made progress with her court-ordered plan, and her visits with her children have been positive, these facts do not mandate reversal of the juvenile court's detriment finding.  (See, e.g., *In re Dakota H., supra*, 132 Cal.App.4th at p. 228 [on substantial evidence review, we do not reweigh the evidence].)  On this record, the juvenile court could reasonably conclude that return of the children to mother's custody—while still exhibiting anger management issues and not yet participating in the court-ordered 52-week anger management program—would create a substantial risk of detriment to their safety or well-being.

Mother also claims she did not enroll in the 52-week anger management program sooner because she was waiting for DCFS to provide financial assistance.  DCFS counters that it repeatedly provided her referrals since August 2024, and mother declined to enroll in a program run by a pastor at a church because she did not " 'like the way they do it.' "  Where the blame should be placed, however, is not the relevant inquiry.  Rather, the question is whether mother has sufficiently alleviated the problems that led to the children's detention so that returning the children to mother would not create a substantial risk of detriment to them.  As discussed above, substantial evidence supports the juvenile court's finding that she had not yet done so.

Accordingly, we conclude substantial evidence supports the juvenile court's determination that mother's progress was insufficient to ensure the children's safe return.

## DISPOSITION

The April 23, 2025 orders are affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


                                                TAMZARIAN, J.

We concur:


MORI, Acting P. J.


COGLIATI, J.*

---

\*     Judge of the Santa Cruz Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.