[No. H035602. Sixth Dist. Aug. 18, 2010.]

V.C., Petitioner, v.
THE SUPERIOR COURT OF SANTA CLARA COUNTY, Respondent;
SANTA CLARA COUNTY DEPARTMENT OF FAMILY AND
CHILDREN'S SERVICES, Real Party in Interest.

COUNSEL

Alfred S. Wright for Petitioner.

No appearance for Respondent.

Susan Ware, Deputy County Counsel, for Real Party in Interest.

OPINION

**BAMATTRE-MANOUKIAN, Acting P. J.**—V.C., father of the child at issue, has filed a petition for writ of mandate challenging the juvenile court's order terminating reunification services for him and setting the matter for a permanency planning hearing. (Welf. & Inst. Code, § 366.26, subd. (*l*);[1] Cal. Rules of Court, rule 8.452.) Father contends that the court should have granted him six more months of reunification services as he was making significant and substantial progress in his court-ordered programs. As we find that substantial evidence supports the juvenile court's finding that father failed to make substantive progress in court-ordered treatment programs, and that there was no substantial probability that the child could be returned to father within six months, we will deny the writ petition.

## BACKGROUND

In November 2008, an emergency response social worker placed the newborn child in protective custody because both the child and her mother tested positive for methamphetamine. The Santa Clara County Department of Family and Children's Services (the Department) filed a petition as to the child pursuant to section 300, subdivisions (b) (failure to protect) and (j) (abuse of sibling). The petition alleged that the mother has had a substance abuse problem since at least 2004 which negatively impacts her ability to care for the child, that the mother has a history of drug-related convictions and is a registered narcotics offender, that the child's half sibling tested positive for methamphetamine at birth in December 2005 and the mother's parental rights to that child were terminated in September 2008, that father had a history of substance abuse which impacts his ability to parent the child, and that father has a drug-related conviction. The court found father to be the child's presumed father at a hearing on November 26, 2008. The court ordered the child detained and granted both parents supervised visitation.

The social worker's reports for the jurisdiction hearing recommended that both parents receive family reunification services. The mother was on felony

---

[1] All further statutory references are to the Welfare and Institutions Code.

probation. She reported that she had not participated in any drug treatment programs but she was willing to do services. Father had just completed a term of parole. He reported that he had been clean for 16 months and that he would do whatever it took to regain custody of the child. Both parents were inconsistent with visitation. The foster family who was in the process of adopting the child's half sibling had requested that the child be placed with them. The child was placed with them on December 31, 2008.

The jurisdiction hearing was held on January 22, 2009. Neither parent was present but both were represented by counsel. Following the uncontested hearing, the court found the petition true by a preponderance of the evidence, and set the disposition hearing for February 5, 2009. Neither parent was present at the disposition hearing but both were represented by counsel. The court adjudged the child a dependent child of the court, ordered the child's current placement to continue, and ordered that both parents receive services from the family reunification program. Father's case plan required him to participate in and successfully complete a parent orientation class, a basic parenting class, a "Nurturing Fathers" parenting class, a program of counseling or psychotherapy, random drug testing, a 12-step substance abuse program, an alcohol and drug services assessment, and an aftercare treatment program if recommended, and to develop an aftercare relapse prevention plan.

The social worker's report for an interim review hearing on March 18, 2009, stated that the whereabouts of the mother were unknown and that she had not made any attempt to contact the social worker. Father was incarcerated in county jail and had been since January 2, 2009, but he had not contacted the social worker until mid-March 2009. Father reported that he would make an effort to engage in services that were available to him in jail. He had not visited the child since December 24, 2009, and had not asked for further visits. Father was present at the March 18, 2009 hearing. The court ordered that its previous orders were to remain in effect.

The social worker's report for the six-month review hearing recommended termination of services for the mother but continuation of services for father. The social worker also proposed changing the child's placement to the home of a paternal cousin. The mother's whereabouts were unknown and she had not made any attempt to contact the social worker. Father was convicted on felony charges and sentenced to two years in prison. He reported that he was participating in programs available to him while incarcerated. He was not permitted to have contact visits with the child. The paternal cousin expressed her intention to adopt the child if the parents failed to reunify with the child.

The contested six-month review hearing was held on October 2, 2009. Both parents were present. The court terminated services for the mother, but

continued services for father. The parents supported the paternal cousin's request for placement of the child in her home and the court approved the change of placement. The child was placed in the home of the paternal cousin on October 20, 2009.

The social worker's report and addendum for the 12-month review hearing recommended that services for father be terminated and that a section 366.26 hearing be set to free the child for adoption. The mother was in state prison. Father was released from prison on March 3, 2010. He had attended some NA/AA (Narcotics Anonymous/Alcoholics Anonymous) meetings while incarcerated, but there was no record of his attendance at the parenting and alternative-to-violence classes that had been offered. After his release from custody he completed a parent orientation class and a drug assessment, and he had begun drug testing, counseling, a basic parenting class, and a 12-step program. The child was forming an attachment to her new foster family but father was visiting the child weekly and they had a good relationship. The court set the matter for a contested hearing at father's request.

The contested hearing was held on May 14, 2010. Neither father nor counsel for the child objected to the request by the Department for the court to consider the hearing to be an 18-month review hearing, and the court granted the Department's request. The court admitted the social worker's report and addendum without objection. The social worker testified that his recommendation was to terminate services for father because, even though father participated in some court-ordered services, "he did not participate regularly and consistently. He did not make any substantive progress. He attended only minimum programs at High Desert State Prison. There were several programs available there. He did not participate in all of the programs. Although, he actively engaged in programs after he's released, it is—he's at the starting stage of his recovery. [¶] In addition to that, he has an extensive and significant criminal history over the last 26 years. He has been in and out of custody for around 30 times. He rarely maintained a stable house or stable employment. He has attended several programs while he was incarcerated and when he was out of incarceration during this 26 years, but it looks like he has not benefited from the programs and he is repeatedly going back to jail system." The social worker further testified that it would not be in the best interest of the child to have the court order another six months of services because the child is under three years old, she has already had three different placements, and she has bonded with her current foster parents. Although father has visited the child weekly since early March 2010, they do not have a strong bond. And, there is not a substantial probability that the child could return to father's custody in the following six months.

Father testified that he was not allowed to participate in programs in prison until December 2009. Although he was permitted to send cards to the child

from prison, he did not do so. Since his release, he has visited the child and his cousin's family once a week for a few hours, and he wants to reunify with the child. He would complete his service plan if the court were to grant him additional time.

Counsel for the Department argued to the court that there was no substantial probability that the child could be returned to father's care in the following six months, and asked the court to terminate services for father. Counsel for the child agreed with the Department's recommendation, and argued that another placement change was not in the child's best interest. Counsel for father asked the court to grant father six more months of services, arguing that father was making "significant and consistent progress in the program he hasn't been in very long. He has done everything he can for the short period of time he has been released."

The court noted that father did not participate in any services between the time the child was taken into protective custody in November 2008 and the time father was incarcerated in early January 2009. Father was in county jail for seven months, from January 2009 through August 2009, and, although he testified that he completed one 90-day program there, he had not provided the court with proof of completion of the program. Father was not able to attend programs in state prison until he was transferred to the High Desert facility in November 2009, but only provided proof of having attended four NA/AA meetings from that time until his release in March 2010. The court stated that, although it was "really impressed at all [father] has done since he's gotten out and being unfettered by the rules of being incarcerated," the court would follow the Department's recommendation. "I cannot find that there's this significant consistent progress in the prior 18 months." "[W]hen children who are the age of [the child] have been moved from home to home, there are attenuate issues for them that impact their development and their emotional well-being. I cannot necessarily find that with six months of additional services, the child would be able to be returned home to you." Therefore, the court set the matter for a section 366.26 hearing on September 2, 2010.

## DISCUSSION

Father contends that the court erred in not granting him an additional six months of reunification services. He argues that "section 361.5[, subdivision ](e) requires that in deciding what program and services to order, the Court must consider the particular barriers to an incarcerated parent[']s access to those court mandated services and shall document this information in the child's case plan. The Court is prohibited from ordering an incarcerated parent to participate in counseling or other treatment services if the correctional facility in which he or she is incarcerated does not provide access to

the treatment services . . . . As the Court found at the six month review hearing held October 2, 2009, that there was a substantial probability of returning the minor to the parent the Court should have held at the twelve month/eighteen month review that Father continued to make continued progress on his case plan and ordered an additional six month services on May 14, 2010 . . . ."

■ "When the child is removed from the home, the court first attempts, for a specified period of time, to reunify the family." (*In re Celine R.* (2003) 31 Cal.4th 45, 52 [1 Cal.Rptr.3d 432, 71 P.3d 787].) "Until permanency planning, reunification of parent and child is the law's paramount concern." (*Judith P. v. Superior Court* (2002) 102 Cal.App.4th 535, 546 [126 Cal.Rptr.2d 14].) For that reason, parents of dependent children generally are entitled to reunification services "aimed at assisting the parent in overcoming the problems that led to the child's removal." (*Ibid.*; see also *Francisco G. v. Superior Court* (2001) 91 Cal.App.4th 586, 597 [110 Cal.Rptr.2d 679] [a presumed father is generally entitled to reunification services].) "The reunification phase of dependency proceedings is a critical aspect of the entire dependency system." (*Ingrid E. v. Superior Court* (1999) 75 Cal.App.4th 751, 755 [89 Cal.Rptr.2d 407].)

■ Section 361.5 governs the provision of family reunification services. It promotes the provision of family reunification services for incarcerated parents by providing in relevant part: "If the parent or guardian is incarcerated or institutionalized, the court shall order reasonable services unless the court determines, by clear and convincing evidence, those services would be detrimental to the child." (*Id.*, subd. (e)(1).) In the absence of a finding of detriment, reasonable reunification services must be provided during the parent's incarceration. (*Mark N. v. Superior Court* (1998) 60 Cal.App.4th 996, 1011 [70 Cal.Rptr.2d 603].) "In determining the content of reasonable services, the court shall consider the particular barriers to an incarcerated or otherwise institutionalized parent's access to those court-mandated services and ability to maintain contact with his or her child, and shall document this information in the child's case plan." (§ 361.5, subd. (e)(1).) "An incarcerated parent may be required to attend counseling, parenting classes, or vocational training programs as part of the reunification service plan if actual access to these services is provided. The social worker shall document in the child's case plan the particular barriers to an incarcerated or institutionalized parent's access to those court-mandated services and ability to maintain contact with his or her child." (*Ibid.*)

In this case, father was not present at the jurisdiction and disposition hearings due to his incarceration, but the court and the social worker were not aware of father's incarceration when the court ordered father's case plan

following the disposition hearing. Father did not challenge the case plan in the juvenile court. Nor did he appeal from the dispositional order or from the order following the March 18, 2009 interim review hearing continuing the case plan as previously ordered. Therefore, father waived his opportunity to complain that the case plan ordered by the court was unreasonable under section 361.5, subdivision (e)(1). (*Steve J. v. Superior Court* (1995) 35 Cal.App.4th 798, 811 [41 Cal.Rptr.2d 731].)

■ For dependent children under the age of three, the parents are typically provided six months of reunification services in order to facilitate family reunification, which may be extended for another six months. (§ 361.5, subd. (a)(1)(B).) Section 366.21, subdivision (e) provides in pertinent part that, at "the review hearing held six months after the initial dispositional hearing, but no later than 12 months after the date the child entered foster care," the court "shall continue the case to the 12-month permanency hearing" if "the court finds there is a substantial probability that the child, who was under three years of age on the date of initial removal . . . , may be returned to his or her parent or legal guardian within six months . . . ." (*Ibid.*) We review the juvenile court's decision to order additional reunification services under the abuse of discretion standard. (See *In re Michael S.* (1987) 188 Cal.App.3d 1448, 1460 [234 Cal.Rptr. 84].) " ' ["]The appropriate test for abuse of discretion is whether the trial court exceeded the bounds of reason. When two or more inferences can reasonably be deduced from the facts, the reviewing court has no authority to substitute its decision for that of the trial court." ' [Citation.]" (*In re Stephanie M.* (1994) 7 Cal.4th 295, 318–319 [27 Cal.Rptr.2d 595, 867 P.2d 706].)

In this case, father was incarcerated at the time of the disposition hearing and he was still incarcerated at the time of the six-month review hearing, which was held in October 2009, 11 months after the child was taken into protective custody. The court extended the period of reunification services for father at the review hearing presumably because father was able to show that he was availing himself of the court-ordered programs that he had access to while incarcerated, and that there was a substantial probability that the child could be returned to him within six months. (§§ 366.21, subd. (e), 361.5, subd. (e)(1); see *S.T. v. Superior Court* (2009) 177 Cal.App.4th 1009, 1015–1016 [99 Cal.Rptr.3d 412].)

However, by the time of the 18-month review hearing in May 2010, the child had been out of father's custody for the entire 18 months of the child's life and father had been incarcerated for 14 months of that time. Father inconsistently visited with the child before his incarceration in January 2009 and did not participate in any services. He did not send any cards to the child while incarcerated even though he was permitted to. He did not participate in

all of the programs available to him while incarcerated, and he did not consistently attend those programs that he did participate in. The child had three different foster care placements during the 18 months the child was out of father's custody, the most recent placement being with the paternal cousin who had expressed interest in adopting the child if reunification with the parents was not successful. Although father regularly visited the child with the paternal cousin's family, and father had a good relationship with the child, the child was bonding with the paternal cousin's family and there was no bond between father and the child.

The juvenile court implicitly found that return of the child to father's care would be detrimental to the child. Father's failure to attend the parenting and the alternatives-to-violence programs that were offered to him while he was incarcerated was prima facie evidence that return of the child would be detrimental. (*Robert L. v. Superior Court* (1996) 45 Cal.App.4th 619, 625 [53 Cal.Rptr.2d 41].) The court explicitly found that father had not regularly participated in or consistently made progress in all of the court-ordered treatment programs that were available to him during the prior 18 months, including while he was incarcerated. Substantial evidence supports the juvenile court's implicit and explicit findings that returning the child to father would be detrimental to the child's well-being. (See *James B. v. Superior Court* (1995) 35 Cal.App.4th 1014, 1021 [41 Cal.Rptr.2d 762] [review of factual determinations by the juvenile court is governed by the substantial evidence standard of review].)

■ Despite receiving 18 months of services in this case, father contends the court erred when it failed to order additional services for him. Father was offered services beyond the statutory 12-month limit for a child who was under the age of three at the time the court initially removed the child from parental custody. (§ 361.5, subd. (a)(1)(B).) Furthermore, "[a]bsent extraordinary circumstances, the 18-month review hearing constitutes a critical juncture at which 'the court must return children to their parents and thereby achieve the goal of family preservation or terminate services and proceed to devising a permanent plan for the children.' [Citations.]" (*Katie V. v. Superior Court* (2005) 130 Cal.App.4th 586, 596 [30 Cal.Rptr.3d 320].) At this point, "the focus of a dependency proceeding shifts to the child's needs for permanency and stability." (*Denny H. v. Superior Court* (2005) 131 Cal.App.4th 1501, 1510 [33 Cal.Rptr.3d 89].) In light of the fact that the child in this case was under three years of age at the time she was removed from her parents' care, she had been in foster care for almost 18 months, and she could not be returned to her parents' care due to a substantial risk of detriment, the court here had little choice but to terminate services and set a section 366.26 hearing. (See, e.g., *Los Angeles County Dept. of Children etc. Services v. Superior Court* (1997) 60 Cal.App.4th 1088, 1092 [70 Cal.Rptr.2d 658]; *Denny H. v. Superior Court, supra*, 131 Cal.App.4th at pp. 1510–1511;

*A.H. v. Superior Court* (2010) 182 Cal.App.4th 1050, 1060 [107 Cal.Rptr.3d 78]; but see *In re Elizabeth R.* (1995) 35 Cal.App.4th 1774, 1787 [42 Cal.Rptr.2d 200].)

■ Here, reunification failed because father failed to avail himself of services offered to him before and during his incarceration. Although he was incarcerated for 14 months of the 18-month reunification period, his incarceration was due to his felonious conduct, which was not an external factor over which he had no control. (Cf. *Denny H. v. Superior Court, supra,* 131 Cal.App.4th at pp. 1510–1511; *In re Elizabeth R., supra,* 35 Cal.App.4th at p. 1787.) Further, the child had never been in father's custody, and the child was bonding with her current foster family, her third, and another change of placement at this stage in her development was not in her best interests. Under the circumstances, the juvenile court did not abuse its discretion in refusing to grant father another six months of reunification services.

### DISPOSITION

The petition for writ of mandate is denied.

Mihara, J., and McAdams, J., concurred.