Filed 12/17/13 S.M. v. Super. Ct. CA1/5

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

|  |  |
|---|---|
| S.M.,<br><br>      Petitioner,<br><br>v.<br><br>SUPERIOR COURT OF CONTRA COSTA COUNTY,<br><br>      Respondent;<br><br>CONTRA COSTA COUNTY CHILDREN AND FAMILY SERVICES BUREAU, et al.,<br><br>      Real Parties in Interest. | A139995<br><br>(Contra Costa County<br>Super. Ct. Nos. J1200937, J1200938, J1200939) |

      S.M. (Mother) seeks writ review of an order setting a permanency planning hearing pursuant to Welfare and Institutions Code section 366.26,[1] a hearing at which her parental rights to three of her children, T.M., P.L., and R.M. (Minors) may be terminated. Mother contends the juvenile court should have accepted the recommendation of the Contra Costa County Bureau of Children and Family Services (the Bureau) that she be

_____

[1] All statutory references are to the Welfare and Institutions Code.

1

given additional reunification services.  She also contends the juvenile court erred in failing to exercise its discretion to order additional reunification services for her.

We find no merit in either of Mother's contentions and accordingly deny her petition for extraordinary relief.

FACTUAL AND PROCEDURAL BACKGROUND

Mother has four children, three of whom are at issue in this writ proceeding.[2]  On June 15, 2012, the Bureau filed petitions under section 300, subdivisions (b) and (j) with regard to Minors.  As relevant here, the petitions alleged Mother had a history of substance abuse that placed the children at risk of harm.  On June 18, 2012, the juvenile court ordered Minors detained, and it later sustained the petitions' section 300, subdivision (b) allegation.  In 2012, Mother received four referrals for drug testing services, two referrals for drug treatment services, three referrals for parent education and counseling, as well as a referral for legal counseling and placement services for Minors.

After the March 18, 2013 disposition hearing, Minors were ordered placed out of home, and the juvenile court ordered that Mother have one hour of supervised visitation twice per month.  Mother's case plan required her to stay sober and show her ability to live free from alcohol dependency, and it required her to test for drugs and engage in mental health counseling, parenting education, and substance abuse services.  The disposition order also set a six-month review hearing.[3]

The Bureau filed a six and twelve month status review report in connection with the review hearing.  The report explained the Bureau had very limited information about Mother because of the latter's reluctance to discuss her situation and activities with the social worker.  The social worker believed Mother was residing in Antioch, receiving disability income, and was unemployed.  The Bureau reported that Mother was not drug testing with the company the Bureau used for such tests.  Although Mother claimed she

---

[2] At the time the proceedings in this case were commenced, T.M. was eight years old, P.L. was six, and R.M. was two.
[3] Mother filed an appeal from the March 18, 2013 disposition order.  That appeal has been docketed as case No. A138711.

2

was drug testing, she did not provide documentation to the Bureau but said she would produce it at the review hearing.  The Bureau had no evidence Mother had completed a parenting education class.

Mother was seeing Minors almost weekly in therapeutic visits but was almost always late.  She did not participate in a visit with her youngest child when her two other children were at summer camp, because she was angry that their participation in camp had interfered with her visits.  As the Bureau's report explained, this limited participation in visitation was the only component of the case plan with which Mother had complied.  The social worker could not recommend that Minors be returned home "[w]ithout knowing [Mother's] drug testing results, parent education experiences, or knowledge or insight gained through therapy[.]"  Since the dispositional hearing, Mother had become willing "to engage [in] a slightly less hostile manner with [the social] worker."  Nevertheless, in the social worker's view, this change did "not indicate or even increase confidence that [Mother] will develop the willingness to engage fully in her case plan and then activate on the children's behalf."  The Bureau recommended continued reunification services for the family.

At the October 3, 2013 review hearing, Mother's counsel requested a continuance because Mother had not brought documentation to support her claim that she had been drug testing at a location that was not approved by the social worker.  The juvenile court denied the request, and the matter proceeded to a contested hearing at the request of Minors' counsel, who disagreed with the Bureau's recommendation that services be extended.

The court asked the social worker for an update on Mother's progress, and the social worker reported Mother had refused to provide documentation that she was drug testing, although Mother confirmed to the social worker that she had received a referral to the testing site.  Mother was referred for mental health services on November 16, 2012, and the social worker informed the court that while Mother had seen a therapist twice, no

3

mental health evaluation had been completed.[4] To the social worker's knowledge, Mother had not participated in substance abuse treatment or a 12-step program. The social worker explained that she had not assessed Mother's home for safety because of Mother's animosity towards her. She also testified that Mother still required supervised visitation because the Bureau did not know whether Mother was still using drugs or alcohol, and therefore it could not determine whether unsupervised visitation with Mother would be safe for Minors.

Mother also testified at the hearing, and she conceded she had missed a visit the previous week. She said she had missed the visit with her youngest child when the older children were at camp because the Bureau had cancelled the visit and not rescheduled it. Mother claimed she had been getting tested for drugs but had not had a test in the past month because "everything feels hopeless[.]" Mother testified she was willing to participate in a mental health assessment, but she was unable to explain why she had refused to use the drug testing facility to which the Bureau had referred her. She ascribed her discomfort with the testing facility to her "paranoia" and depression.

The juvenile court found that the social worker had "go[ne] the extra mile" in this case, and it ruled there was clear and convincing evidence the Bureau had provided Mother with reasonable services. Mother, however, had "simply chosen to not participate." The court specifically noted that Mother had produced no evidence whatsoever that she had participated in drug treatment or testing "which are the primary issues that brought this family before the Court." The court explained Mother had "done absolutely nothing based on the state of the evidence" before it, and it expressly found Mother was not credible. Although the court believed Mother loves her children, it concluded "she has simply refused to participate in any way with her case plan and

---

[4] At some point, Mother's Medi-Cal coverage "changed to San Francisco" for an unexplained reason. Mother was given information about how to change her coverage back to Contra Costa County, and this was done. The social worker had numerous conversations with Mother regarding the change of her Medi-Cal coverage, and Mother's "typical response was that she was aware of what she needed to do and who she needed to call regarding that."

address her substance abuse issues that brought these kids to court." Thus, it found Mother had made "minimal" progress toward alleviating or mitigating the problems necessitating Minors' placement in foster care, and it concluded returning the children to her custody would create a substantial risk of detriment to their safety and well-being. It therefore set a section 366.26 hearing for January 15, 2014.

Mother then filed a timely writ petition under California Rules of Court, rule 8.452(a).

DISCUSSION

Mother's petition raises two issues. She claims the juvenile court erred in refusing to adopt the Bureau's recommendation that services be extended, because the lower court's finding that she had been offered reasonable services is unsupported by substantial evidence. She also argues the juvenile court erred in failing to exercise its statutory discretion to extend services. Neither argument has merit.

I.      *Standard of Review*

The juvenile court's finding that the Bureau provided reasonable reunification services to Mother must be upheld if it is supported by substantial evidence. (*James B. v. Superior Court* (1995) 35 Cal.App.4th 1014, 1020.) Although the juvenile court must make this finding by clear and convincing evidence, that standard is for the edification and guidance of the trial court and is not a standard of appellate review. (*Sheila S. v. Superior Court* (2000) 84 Cal.App.4th 872, 880.) If substantial evidence supports the juvenile court's finding, its reasonable services determination is not open to review on appeal. (See *id*. at pp. 880-881.)

The juvenile court's decision on whether to order additional reunification services is reviewed for abuse of discretion. (See *V.C. v. Superior Court* (2010) 188 Cal.App.4th 521, 528.) This test requires us to ask only whether the juvenile court's decision exceeded the bounds of reason; if two or more inferences can reasonably be drawn from the facts, we have no authority to substitute our decision for that of the juvenile court. (*Ibid*.)

5

II.     *Substantial Evidence Supports the Juvenile Court's Reasonable Services Finding.*

Mother tells us "[t]he record in the instant case is uncontradicted." In her view, through no fault of her own, she was told she could receive no referrals from the Bureau because her Medi-Cal coverage in Contra Costa County had been terminated. According to Mother, the social worker "testified she was unable to provide referrals to [Mother] until September 17, 2013, two weeks prior to the contested hearing of October 3, 2012." This contention is simply false.

Contrary to Mother's claims, the social worker testified Mother's first mental health referral was on November 16, 2012. Mother had been referred for drug testing even earlier, in either June or August of 2012. Far from being uncontradicted, the record completely belies Mother's claim that she received no referrals until two weeks prior to the hearing. As the juvenile court found, Mother simply chose not to avail herself of those services, and it was not the social worker's obligation "take [Mother] by the hand and escort . . . her . . . through classes or counseling sessions." (*In re Michael S.* (1987) 188 Cal.App.3d 1448, 1463, fn. 5; see also *V.C. v. Superior Court, supra,* 188 Cal.App.4th at p. 529 [parent's failure to participate in services is prima facie evidence that return of minor to parent's custody would be detrimental].)

Equally unavailing are Mother's arguments that she failed to receive adequate visitation services. She claims it is "uncontroverted" that no visitation occurred between her and Minors and that she received only one hour per week of "family therapy." This does not accurately reflect the testimony at the hearing, which was that Mother was receiving *supervised visitation*. Although Mother now complains this visitation was insufficient, the social worker explained that the Bureau was unwilling to allow further unsupervised visitation because it could not be sure Mother was not abusing alcohol and drugs. In addition, Mother refused a visit with her youngest child because of her anger at the fact her older children had been sent to summer camp. Thus, Mother did not even participate fully in the visitation she *was* offered. (See *V.C. v. Superior Court, supra,* 188 Cal.App.4th at pp. 528-529 [juvenile court did not abuse discretion in refusing to order additional reunification services where father visited child inconsistently].)

6

III.     *The Juvenile Court Did Not Abuse its Discretion in Declining to Extend Services.*

Mother argues the juvenile court had discretion to extend reunification services beyond the combined six and twelve month review hearing, and in refusing to do so, it failed to give sufficient weight to the goal of family preservation. (See *In re Daniel G.* (1994) 25 Cal.App.4th 1205, 1216-1217 [in exercising discretion to order further reunification services, juvenile court "should consider the services already provided [parent and child], the likelihood of success of any further reunification efforts, whether [child's] need for a prompt resolution of his status outweighs any benefit from further reunification services and such other factors as the parties may bring to the court's attention"].) Mother has not demonstrated that the juvenile court's decision exceeded the bounds of reason, and we therefore find no abuse of discretion. (*V.C. v. Superior Court, supra,* 188 Cal.App.4th at p. 528.)

Where, as here, one of the children in a sibling group is under the age of three at the time of removal, a parent's failure to participate regularly in court-ordered treatment programs or to avail herself of services provided as part of the case plan "may result in a termination of efforts to reunify the family after six months." (§ 361.5, subd. (a)(3); see *Sara M. v. Superior Court* (2005) 36 Cal.4th 998, 1009, fn. 4 ["When the child is under the age of three, the maximum period of reunification services is generally six months."].) Dependency law does not establish a minimum period of reunification. (*Denny H. v. Superior Court* (2005) 131 Cal.App.4th 1501, 1510.) Instead, the law's "emphasis is on 'setting outside limits to the length of time a child may be kept in foster care before a permanent plan is established.'" (*Ibid*.)

As explained in the preceding section of this opinion, the juvenile court found Mother had failed to participate in court-ordered services and had made only minimal progress toward the goals set in her case plan. Her substance abuse was what brought her family to the Bureau's attention, yet she refused to be tested for drugs at the facility to which the Bureau had referred her. Despite her awareness of her case plan and her referrals for drug testing and treatment, she provided no documentation to the court that she had been getting tested for drugs. Mother had been referred for services beginning in

the summer of 2012, but by the time of the October 3, 2013 review hearing, she had largely refused to participate. In these circumstances, the juvenile court was certainly entitled to conclude that the likelihood of success of further reunification efforts was low.

While family preservation is the first priority when dependency proceedings are commenced, the unique needs of children under the age of three justify "a greater emphasis on establishing permanency and stability earlier in the dependency process '"in cases with a poor prognosis for family reunification."'" (*M.V. v. Superior Court* (2008) 167 Cal.App.4th 166, 175, quoting *Daria D. v. Superior Court* (1998) 61 Cal.App.4th 606, 611.) Given Mother's failure to participate in services, the juvenile court could properly conclude that the prognosis for this particular family's reunification was indeed poor. In so concluding, it did not abuse its discretion.

DISPOSITION

The petition for an extraordinary writ and request for stay are denied on the merits. (§ 366.26, subd. (*l*)(4)(B).) This decision shall be final immediately. (Cal. Rules of Court, rules 8.452(i), 8.490(b)(3).)

_____

Jones, P.J.

We concur:

_____

Simons, J.

_____

Needham, J.