Filed 4/23/15  In re Z.J. CA2/3

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re Z.J. et al., Persons Coming Under the Juvenile Court Law. | B260262 |
| _____ | |
| L.D., | |
| Petitioner, | (Los Angeles County Super. Ct. No. CK89209) |
| v. | |
| SUPERIOR COURT OF LOS ANGELES COUNTY, | |
| Respondent; | |
| LOS ANGELES DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | |
| Real Party in Interest. | |

Petition for extraordinary writ to review orders of the Superior Court of Los Angeles County, Margaret Henry, Judge.  Petition granted.

Law Office of Marlene Furth, Melissa A. Chaitin, Lakeshia M. Dorsey and Gibran Bouayad, for Petitioner.

No appearance for respondent.

Mark J. Saladino, County Counsel, Dawyn R. Harrison, Assistant County Counsel, and Melinda A. Green, Deputy County Counsel, for Real Party in Interest.

By petition for an extraordinary writ, L.D. (mother) asks us to review juvenile court orders terminating her family reunification services and setting a permanency planning hearing under Welfare and Institutions Code section 366.26.[1] We issued a stay of the section 366.26 hearing and an order to show cause, and the Department of Children and Family Services (DCFS) responded.

Having reviewed the petition on the merits, we now return the matter to the juvenile court to conduct a new hearing. The juvenile court appears to have concluded at the 18-month status review hearing that mother's two children could not safely be returned home because mother did not have suitable housing. Prior to the 18-month hearing, however, neither DCFS nor the court ever identified mother's housing situation as a concern, and DCFS never provided mother with any housing assistance. Accordingly, we return the matter to the juvenile court with directions to conduct a hearing to address whether legally sufficient grounds independent of mother's lack of suitable housing currently exist such that it would be detrimental to place the children in mother's care. If such grounds exist, the court's order terminating mother's reunification services and setting a permanency planning hearing shall be reinstated; if no such grounds exist, the juvenile court shall order DCFS to provide, for a period of six months, reunification services and related efforts, including, but not limited to, assistance in obtaining suitable housing, and take the necessary steps to return the children to mother's custody.

## FACTUAL AND PROCEDURAL BACKGROUND

### A. Detention

Z.J.1 (born 12/2008) and Z.J.2 (born 2/2011) are the children of L.D. and G.J. On January 23, 2013, the Gardena Police Department received a report that mother and father were fighting outside mother's apartment. When the police arrived, they discovered that mother had left the children unattended in the apartment for approximately 15 minutes. Mother later explained that father had taken her cell phone,

---

[1] All subsequent undesignated statutory references are to the Welfare and Institutions Code.

and she had left the children in the apartment while she chased father to get the phone back. She also admitted that she had left her daughter alone with father earlier in the day even though she knew that a court order prohibited father from having unmonitored visits with either child. The children initially were released to mother, but on March 1, 2013, they were detained with maternal grandparents Kimberly S. and Phillip D., where they have remained.

The detention report noted that the family had been the subject of a prior dependency proceeding that terminated on November 8, 2012, with family law orders in place. Mother had primary custody and father had monitored visitation. Father had a history of bipolar disorder but had declined psychiatric medication. Instead, he used marijuana "often." Mother admitted allowing father unmonitored visits with the children.

DCFS filed a juvenile dependency petition on March 6, 2013. As subsequently amended, it alleged: (a-1) On January 23, 2013, mother allowed father unmonitored access to the children in violation of court orders, and engaged in a violent incident with father in which she chased father down the street; (b-1) Father has a history of substance abuse and is a daily user of marijuana, which renders him unable to provide appropriate care and supervision of the children. On prior occasions, father was under the influence of marijuana while caring for the children, and mother knew of father's substance abuse and failed to protect the children; (b-3) On January 23, 2013, mother and father left the children home alone without adult supervision, endangering their physical health and placing them at risk of physical harm; (j-1) Father has a history of depression and has been diagnosed with bipolar disorder and ADHD. His condition endangers the children's physical health and safety and places them at risk of harm.[2]

On March 6, 2013, the juvenile court found a prima facie case for detaining the children. It ordered DCFS to provide family reunification services and granted the parents monitored visitation.

---

[2]     Two additional allegations were dismissed and are not relevant to this appeal.

3

B.    *Jurisdiction and Disposition*

The March 28, 2013 Jurisdiction/Disposition Report said the family received family maintenance services from October 18, 2010 to November 8, 2012.  Father had a juvenile criminal history, including arrests for attempted robbery, robbery, vandalism, and taking a vehicle without consent.  Mother had no criminal history.

The April 4, 2013 interim review report noted that mother's bedroom door was off the hinges, and the door and hall had "holes . . . which resembled punch marks."  Mother said the door and hall were damaged when her brother, Donte M., was arrested and law enforcement raided the house.  DCFS followed up with law enforcement; they advised that "Donte R.," who is not mother's brother, had been arrested in connection with an armed robbery in which mother and father were also suspects.  According to a detective, criminal charges were not pursued against mother and father, but their involvement was confirmed by several witnesses.

On April 4, 2013, mother and father pled no contest to the allegations of the amended petition.  The juvenile court found by clear and convincing evidence that substantial danger existed to the children's physical or emotional health and that the current placement was necessary and appropriate.  The court ordered mother to participate in parenting classes, individual counseling to address case issues, anger management and domestic violence education, and conjoint counseling with father if mother intended to continue a relationship with him.  Mother was granted monitored visitation with the children.

C.    *Six Month Status Review*

Per the October 3, 2013 status review report, mother reported she and father were on good terms but were not "together."  Mother said she did not have a permanent address but was expecting a Section 8 voucher to be issued soon.  She said she was working at a convalescent hospital and had been participating in parenting education and individual counseling.  Mother's counselor reported that mother was scheduled for twice-weekly group sessions and said, "Client needs to be more consistent with her attendance; however when she's here she actively participates in all sessions."

At the six month status review hearing, the court found mother had made partial progress towards alleviating or mitigating the causes necessitating foster care placement, and it continued the case for an additional six months.

### D.     Twelve Month Status Review

The 12-month status review report, dated April 3, 2014, said mother had a job and stable housing and had completed her parenting classes. She was visiting the children "sporadically" one to two times each week; during visits, mother bathed and played with the children. Mother had attended four sessions of individual counseling, but had done so through a program not approved by the court. She was working at a convalescent hospital as a caregiver and had stable housing. Mother denied having a relationship with father, but had "been witnessed or reported to have been seen with bruises and marks by her eyes on multiple different occasions." DCFS assessed the risk of future abuse by mother to be "high" and recommended terminating mother's reunification services.

In a "last minute information for the court," DCFS reported that maternal grandmother observed mother to again have a bruised eye and cut lip. When questioned, mother said she had fought with another woman. Maternal grandmother also reported that two of mother's tires had been slashed, a car window had been broken, and there was a bullet hole in one of mother's car doors. Father had been arrested for a misdemeanor.

At the 12-month status review hearing on April 3, 2014, the court terminated father's reunification services. The court stated it believed mother was still seeing father and that mother's progress had been "partial." It ordered mother's services extended "under the condition mother enrolls in a domestic violence program for victims, forthwith."

### E.     Eighteen Month Status Review

The 18-month status review report, dated September 5, 2014, said mother had completed a parenting skills class but had not completed a "hands-on" parenting program. Mother reported she had completed individual counseling and a domestic violence support group, but she had not provided DCFS with proof of completion. Mother reported that she and father were no longer in a relationship and that she had

5

moved to San Bernardino County, where she had no contact with father. She told DCFS she had an appointment on September 3, 2014, with the Housing Authority in San Bernardino. DCFS evaluated the risk of future harm to be "high" and recommended terminating mother's reunification services.

On September 5, the court continued the hearing to October 10. The record does not reflect why or at whose request the hearing was continued. The hearing subsequently was again continued to October 30, apparently at mother's request.

In a "last minute information for the court" dated October 2, 2014, DCFS said it had confirmed mother's completion of individual counseling and domestic violence education. Mother claimed not to have seen father since July 2014, but the "CSW has been informed on two occasions that the mother continues to have interaction with the father of the children." Mother reported she did not currently have appropriate housing for the children as she was no longer working, had not received a housing voucher, and could not afford to pay for housing. Based on the forgoing, DCFS recommended termination of mother's reunification services.

In an additional "last minute information for the court" dated October 30, 2014, DCFS said mother reported that she had started working again and had rented an apartment. However, as of the date of the report mother had not provided DCFS with the contact information necessary to allow it to verify her employment or apartment rental.

The court held a contested hearing on October 30, 2014. Mother testified that father had assaulted her in the past, most recently in January 2014. Mother said she had learned through her domestic violence classes that "it's not okay to be stalked, battered, to take any kind of abuse." She was aware that maternal grandmother believed she was still seeing father, but said she was not. She said since September, she had been visiting her children for several hours each day. She was waiting for her landlord to return her Section 8 papers and expected to finalize her Section 8 housing in about three weeks. In the interim, mother was living with a friend. Mother's counsel requested that the children be returned to mother; alternatively, counsel requested a three week continuance to allow mother to obtain housing.

6

Mother conceded she had not told DCFS where she was staying because "I didn't think it was necessary. It is just temporary . . . until my housing comes through." She also noted that until recently, she had been staying with her uncle in San Bernardino.

After hearing the evidence, the court denied the request to continue the hearing, terminated mother's reunification services, and set a section 366.26 hearing. The court explained: "We cannot return today. One of the orders is that – for reunification, parent has to have stable and appropriate housing. Mother does not have that now. Section 8, we see it constantly, particularly in drug court, sometimes people think they are going to get housing in three weeks and sometimes it's six months to a year [before] they are able to get housing. [¶] So the children cannot be returned today." The court said, however, that mother "can file a 388 when she gets appropriate housing."

The court granted mother unmonitored day visits and gave DCFS discretion to liberalize visitation and to allow mother to move in with maternal grandparents if they consented. It also made the following findings: "Continued jurisdiction is necessary. Return of the children to the physical custody of the parents would create a substantial risk of detriment to their safety, protection, physical or emotional well-being, creating a continued necessity for . . . the current placement with the maternal grandmother. [¶] The extended progress made [by mother in] alleviating and mitigating the cause[s] . . . necessitating placement . . . has been significant. . . . [¶] And the Department has complied with the case plan in making reasonable efforts to return the children to a safe home and to complete any steps necessary to finalize their permanent placement."

On January 5, 2015, mother filed a petition for extraordinary writ challenging the October 30, 2014 order and seeking an immediate stay of the section 366.26 hearing. We granted the stay request, issued an order to show cause, and ordered further briefing to allow DCFS to file a response to mother's petition.

## DISCUSSION

Mother asserts that there was insufficient evidence to support the trial court's finding that the children could not safely be returned to her custody, and that the trial

7

court abused its discretion in denying mother's request for a continuance to allow mother to secure housing.  For the reasons that follow, we agree.

## I.

## Applicable Law

Section 366.22, subdivision (a) provides that at the 18-month hearing, after considering the admissible and relevant evidence, the juvenile court "shall order the return of the child to the physical custody of his or her parent or legal guardian unless the court finds, by a preponderance of the evidence, that the return of the child to his or her parent or legal guardian would create a substantial risk of detriment to the safety, protection, or physical or emotional well-being of the child."  The social worker shall have the burden of establishing detriment, and "[t]he failure of the parent or legal guardian to participate regularly and make substantive progress in court-ordered treatment programs shall be prima facie evidence that return would be detrimental." (§ 366.22, subd. (a).)

"In making its determination, the court shall review and consider the social worker's report and recommendations and the report and recommendations of any child advocate appointed pursuant to Section 356.5; shall consider the efforts or progress, or both, demonstrated by the parent or legal guardian and the extent to which he or she availed himself or herself of services provided . . . ."  (§ 366.22, subd. (a).)  If the child is not returned to his or her parent, "the court shall specify the factual basis for its conclusion that return would be detrimental."  (*Ibid*.)  The court then shall terminate family reunification services and order a hearing pursuant to section 366.26 to determine whether adoption, guardianship, or long-term foster care is the most appropriate plan for the child.  (§ 366.22, subd. (a).)

Among the issues that the juvenile court must consider in determining whether to terminate family reunification services and set a section 366.26 hearing is the adequacy of the services provided to the parents.  If the child is not returned to the custody of his or her parent, the court must consider whether reasonable services have been offered or provided and must make a finding in this regard.  (Cal. Rules of Court, rule 5.708(e)(1).)

8

Further, at "any 6-month, 12-month, or 18-month hearing, the court may not set a hearing under section 366.26 unless the court finds by clear and convincing evidence that reasonable services have been provided or offered to the parent or legal guardian." (Cal. Rules of Court, rule 5.708(m); see also *C.F. v. Superior Court* (2014) 230 Cal.App.4th 227, 238 ["[A] court may not order a hearing pursuant to section 366.26 'unless there is clear and convincing evidence that *reasonable services* have been provided or offered to the parent or legal guardian.' "].)

" 'An order scheduling a permanency planning hearing is nonappealable but may be subject to immediate writ review. (Welf. & Inst. Code, § 366.26, subd. (k).)' (*In re Catherine S*. (1991) 230 Cal.App.3d 1253, 1256.)" (*In re Suhey G.* (2013) 221 Cal.App.4th 732, 742.) We review the juvenile court's findings for substantial evidence. (*V.C. v. Superior Court* (2010) 188 Cal.App.4th 521, 523; *In re Tabitha W.* (2006) 143 Cal.App.4th 811, 814.)

## II.
### Inadequate Housing as a Basis for Terminating Family
### Reunification Services and Setting a
### Permanency Planning Hearing

The Court of Appeal considered an issue very like that raised in the present case—whether parental rights may be terminated because a parent has not obtained suitable housing—in *In re P.C.* (2008) 165 Cal.App.4th 98. There, the Orange County Social Services Agency (SSA) filed a juvenile dependency petition concerning two children, then ages five and two. The petition alleged father had physically abused mother in the children's presence, mother had physically abused the children, and mother had left the children with a caretaker without means of support. (*Id.* at p. 100.) The children were detained and placed in foster care. (*Ibid*.)

Mother's visitation with the children during the reunification period was "regular and appropriate." Mother had some difficulty complying with her case plan because she was working full time and her work schedule conflicted with her parenting class and counseling schedule, but she ultimately completed both. Indeed, by the 18-month review

9

hearing, the social worker testified that mother had completed all the services required by her case plan. (*In re P.C.*, *supra*, 165 Cal.App.4th at p. 101.) Mother's living situation remained problematic, however. Because mother's income was very low, she could afford only shared living situations and despite her best efforts, mother was unable to find a home in which all the other adult residents were willing to be "live-scanned" or did not have criminal records. (*Id.* at pp. 101-102.) Thus, although the social worker testified that mother " 'was completely willing to follow [SSA's] requests and to try to move into a place where people would be approved,' " mother was not able to secure a suitable living arrangement. (*Id.* at p. 102.)

Because mother had not obtained safe housing for the children by the 18-month review hearing, the juvenile court found that returning the children would create a substantial risk of detriment, and it terminated reunification services and set a section 366.26 hearing. (*In re P.C.*, *supra*, 165 Cal.App.4th at p. 102.) At the contested section 366.26 hearing, the court terminated mother's parental rights. Mother appealed. (*In re P.C.*, at p. 103.)

The Court of Appeal reversed. It noted that mother had corrected all the problems that led to the juvenile court's assertion of jurisdiction, and the only reason SSA did not return the children was her lack of suitable housing. (*In re P.C.*, *supra*, 165 Cal.App.4th at p. 105.) As to that issue, the court found that lack of suitable housing was not a proper basis for terminating mother's parental rights because SSA had not made appropriate efforts to help her obtain housing. The court explained: "The social worker's testimony at the section 366.26 hearing establishes SSA failed to do its part in helping mother find housing SSA could determine was suitable. The social worker did not timely obtain mother's signature on [a] family unification referral that might have moved mother higher on the low-income housing list, simply recommended mother look in the Pennysaver for housing, and admittedly was unaware of other resources to which she could refer mother for low-income housing. In this regard, the juvenile court's finding that SSA had provided or offered all reasonable services was not supported by substantial evidence." (*Id.* at p. 106.)

10

The court emphasized that its conclusions "should not be construed as a criticism of SSA's policy that before a dependent child can be returned to his or her parents, any adult who will be sharing living quarters with the child must be vetted. The safety and well-being of the children in the dependency system is our primary concern, as it is the primary concern of SSA." (*In re P.C.*, *supra*, 165 Cal.App.4th at p. 107.) Further, the court noted that its resolution "is not a perfect 'fix' for the problem at this point. The children have already been placed in a prospective adoptive home, and we are loathe to upset the rare instance of stability in their lives." (*Ibid.*) Nonetheless, the court said, under the existing circumstances, it could not permit mother's parental rights to be terminated. (*Ibid.*)

The court therefore reversed the order terminating mother's parental rights and remanded to the juvenile court with directions to conduct a hearing "to address whether legally sufficient grounds independent of mother's poverty and lack of stable, suitable housing currently exist such that it would be detrimental to place the children in mother's care." (*In re P.C.*, *supra*, 165 Cal.App.4th at p. 107.) If grounds "independent of mother's poverty and lack of stable, suitable housing currently exist such that it would be detrimental to place the children in mother's care," the lower court order terminating parental rights could be reinstated. (*Ibid.*) If no such grounds existed, "the juvenile court shall order SSA to restart reunification services and related efforts, including, but not limited to, assistance in obtaining stable, suitable housing, and take the necessary steps to return the children to mother's custody. Reunification services and related efforts shall be provided for a period of six months from the date on which the juvenile court orders such services to be restarted. If these renewed efforts fail, the juvenile court may proceed to terminate mother's parental rights." (*Id.* at pp. 107-108.)

The court similarly concluded in *David B. v. Superior Court* (2004) 123 Cal.App.4th 768 (*David B.*). There, the father fully complied with his case plan, but because of his extremely low income he was not able to obtain suitable housing. By the 18-month hearing, father was living with his sister and brother-in-law, but SSA policy prohibited the child from living there because father's brother-in-law had a criminal

11

record. The juvenile court therefore terminated reunification services and set a section 366.26 hearing. Father filed a petition for extraordinary relief, arguing that there was insufficient evidence to support the court's conclusion that placing the child in father's custody would create a substantial risk of detriment to her safety and well-being. (*David B.*, at p. 788.)

The court reversed, concluding that SSA had neither properly advised father that his child could not live with his sister and brother-in-law nor helped him find appropriate housing. The court explained: "[T]he record reflects that the only real problem with placing [child] Susan in [father] David's current home was his brother-in-law's troubled history. And while the record also reflects SSA had reached the conclusion it would oppose such a placement fairly early in the case—at least as early as August of 2003, which was prior to the 12–month hearing—there is no evidence that David was ever informed of that specific concern. Instead, the record states that the social worker merely gave David some generic advice concerning the need for housing, along with a list of referrals, *also prior to the 12–month hearing*, and then never discussed the issue with him again.

"Of course, we recognize that '[r]eunification services need not be perfect. [Citation.] But they should be tailored to the specific needs of the particular family. [Citation.]' [Citation.] As this court has previously explained, 'to make the requisite findings, the record should show that the supervising agency identified the problems leading to the loss of custody, offered services designed to remedy those problems, maintained reasonable contact with the parents during the course of the service plan, and made reasonable efforts to assist the parents in areas where compliance proved difficult (such as helping to provide transportation and offering more intensive rehabilitation services where others have failed).' [Citation.]" (*David B.*, *supra*, 123 Cal.App.4th at pp. 793-794.)

The court therefore ordered the juvenile court "to reconsider its determination that David's brother-in-law presents a substantial danger to Susan's safety, applying its own independent judgment, and indulging no presumptions in favor of SSA's contentions; and

12

if the court concludes Susan cannot be returned to David's custody at that time, issue a new order reflecting that the services provided to David during the final six-month reunification period were inadequate, and requiring SSA to offer additional reunification services. If, after the provision of such services, David is still unable to provide Susan with a suitable residence, the court may reissue the order terminating services and schedule the permanency hearing, or make any other order appropriate to the circumstances at that time." (*David B.*, *supra*, 123 Cal.App.4th at p. 798.)

## III.

### Because DCFS Never Identified Mother's Housing as a Concern, Her Lack of Suitable Housing Cannot Support the Order Terminating Her Reunification Services

Mother contends there was insufficient evidence to support the juvenile court's finding that her children could not safely be returned to her custody and care. For the reasons that follow, we agree.

In the present case, as in *In re P.C.* and *David B.*, DCFS never identified mother's housing as a concern or helped her to obtain appropriate housing. At each stage of the proceedings, DCFS identified mother's deficits as lack of appropriate parenting skills and domestic violence, and mother was told that she had to participate in a parenting program, individual counseling, and a domestic violence program in order to secure her children's return. DCFS agrees that mother complied with the court's orders in these regards—i.e., she completed required parenting and domestic violence programs and participated in individual counseling. As far as our appellate record reflects, at no point was mother told that her housing was unsuitable or that she would need to make other housing arrangements before her children would be returned to her. She also was never provided any assistance with obtaining appropriate housing. And, as in *In re P.C.* and *David B.*, mother's inability to obtain proper housing for the children appears to have been a result of poverty, not lack of effort.

DCFS contends that housing was not the only issue in this case, and that substantial evidence of other serious issues—including mother's alleged participation in

13

an armed robbery, prior involvement with the juvenile court, a report that mother was seen with bruises and marks on her face, and significant damage to her car (slashed tires, bullet holes)—all suggested that "mother continued to engage in violence and her home life was not safe for children." Whatever the validity of these concerns, they do not appear from the record to have been *the court's* concerns—as we have said, the sole reason the court gave for terminating mother's reunification services and setting a section 366.26 hearing was that mother did not have stable and appropriate housing. Indeed, it appears that the juvenile court either did not credit the reports of violence or did not consider them a significant concern: On the same day the court terminated mother's reunification services, it granted mother unmonitored visitation and granted permission for mother to live with the children in maternal grandmother's home.

Based on the foregoing, we conclude that substantial evidence did not support the juvenile court's findings that returning the children to mother would create a substantial risk of detriment to their physical or emotional health, and that DCFS offered mother reasonable reunification services. We therefore reverse the order terminating mother's reunification services and setting a section 366.26 hearing. Further, we remand this matter to the juvenile court with directions to conduct a hearing to address whether legally sufficient grounds independent of mother's lack of suitable housing currently exist such that it would be detrimental to place the children in mother's care. If grounds independent of mother's lack of suitable housing currently exist such that it would be detrimental to place the children in mother's care, the court's order terminating reunification services and setting a section 366.26 hearing shall be reinstated. If no such grounds exist, the juvenile court shall order DCFS to restart reunification services and related efforts, including, but not limited to, assistance in obtaining suitable housing, and to take the necessary steps to return the children to mother's custody. Reunification services and related efforts shall be provided for a period of six months from the date on which the juvenile court orders such services to be restarted. If these renewed efforts fail, the juvenile court may proceed to terminate mother's reunification services and set a section 366.26 hearing.

## DISPOSITION

The petition for extraordinary relief is granted.  The juvenile court is directed to conduct a hearing and make further orders consistent with the views expressed herein.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

                                     EDMON, P. J.

We concur:

KITCHING, J.

LAVIN, J.[*]

---

[*] Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.