Filed 4/22/16  J.A. v. Superior Court CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| J.A., | |
| Petitioner, | E065363 |
| v. | (Super.Ct.No. RIJ105688) |
| THE SUPERIOR COURT OF RIVERSIDE COUNTY, | OPINION |
| Respondent; | |
| RIVERSIDE COUNTY DEPARTMENT OF PUBLIC SOCIAL SERVICES, | |
| Respondent. | |

ORIGINAL PROCEEDINGS; petition for extraordinary writ.  Matthew C.

Perantoni, Judge.  Petition is denied.

Anastasia Georggin, for Petitioner.

No appearance for Respondent.

1

Gregory P. Priamos, County Counsel, Julie Koons Jarvi and Carole A. Nunes Fong, Deputy County Counsel, for Real Party in Interest.

In this matter petitioner J.A. (Father) challenges an order terminating reunification services and setting a hearing pursuant to Welfare and Institutions Code section 366.26.[1] We find no error and deny the petition.

I

STATEMENT OF FACTS

Father had sole physical and legal custody of the minor A.A.[2] On November 25, 2014, Father and his girlfriend had an argument that led to physical abuse of the girlfriend and Father's arrest. A.A. had witnessed other acts of physical abuse and threatened violence by Father, including carrying or displaying a knife. Father was currently on probation for domestic violence arising out of an earlier incident and had dropped out of a program required by his probation. Father had been drinking at the time of the November incident.

---

[1] All subsequent statutory references are to the Welfare and Institutions Code unless otherwise specified.

[2] Mother has an extensive history with child protective services with respect to her older children, none of whom were in her care at the time of these proceedings. Mother played no part in this case.

Otherwise, the children[3] showed no signs of abuse or neglect and the home was clean with no safety issues. Nevertheless, all three children were placed in protective custody.

In the report prepared for the eventual jurisdictional/dispositional hearing, Father admitted that he was an alcoholic and that his girlfriend would relate to him instances of verbal abuse which he could not remember. He had a prior conviction for DUI. The current assault on his girlfriend had resulted in a felony conviction for which he was placed on probation and ordered to serve 365 days in jail. With respect to a previous dependency proceeding concerning A.A., Father had apparently participated in counseling, parenting, and substance abuse programs. (These proceedings evidently primarily involved the deficiencies of A.A.'s mother, and terminated with A.A.'s custody given to Father.)

Before the hearing was held, however, an amended petition was filed which did allege physical abuse to A.A., who, during an examination, was found to have a bite mark and bruises. Although it could not be determined whether the bite was by an adult or a child, A.A. stated that her father had bitten her, kicked her on the back, and pulled her hair.

On January 13, 2015, the court took jurisdiction over the minor under section 300, subdivisions (a), (b) and (g).[4] Father was provided with reunification services, but as he

---

[3] Father's girlfriend had two children with him of her own.

[4] Physical abuse and failure to protect/provide, respectively.

remained incarcerated until June 12, 2015, he was unable to participate until that time. However, he did promptly meet with the social worker once he was released.[5] The minor was having therapy to deal with a newly diagnosed "Intermittent Explosive Disorder." She was in a placement with an older half sibling in the latter's adoptive home.

At the six-month status review hearing on July 14, 2015, the court continued services to Father.

By the time the social worker prepared the report for the 12-month hearing, Father had completed a parenting class. He had also completed a substance abuse program and aftercare, and had tested negative for alcohol and all controlled substances while in the program. However, although he had repeatedly indicated his intent to do so, he had not enrolled in the 52-week child abuse class as ordered by the criminal court and had also not enrolled in a domestic violence class as ordered in this case. While he was engaged in counseling, the counselor reported that Father continued to blame alcohol *and* his girlfriend for the domestic violence, was reluctant to "open up," and did "not see the benefit of therapy."

Father had regularly visited with A.A. and actively engaged with her during the visits. A.A. seemed to enjoy the visits but did not exhibit distress when they separated. However, the social worker was concerned that A.A.'s tendency to throw a tantrum when

---

[5] Father was due to be released from jail on May 24, 2015, but by that time the People had filed a new charge of felony child abuse. (Pen. Code, § 273a.) He eventually posted bail on that charge.

4

she did not get what she wanted could provoke Father if he had not learned techniques to deal with his anger.

At the contested 12-month review hearing on February 4, 2016, no testimony was taken. Counsel for Father argued that he had completed most of the requirements and noted that visits were positive. She also pointed out that Father had been incarcerated for several months and asserted that Father "very much is going to do" the domestic violence program. Father's counsel also took the position that he had completed the counseling requirement of his plan, although the social worker disputed that. Finally, Father's counsel told the court that Father had obtained an extension from *probation* with respect to the domestic violence class.

The trial court found no substantial probability of return within the next six months and terminated services. It focused on the fact that domestic violence and abuse were the main reasons for the dependency proceeding.

II

DISCUSSION

A decision to terminate reunification services rests within the sound discretion of the trial court. (*Fabian L. v. Superior Court* (2013) 214 Cal.App.4th 1018, 1028.) With respect to the findings of detriment from return to parental custody and the lack of substantial probability of return within the next six months, we apply the " 'substantial evidence' " standard. (*Tracy J. v. Superior Court* (2012) 202 Cal.App.4th 1415, 1424; *Kevin R. v. Superior Court* (2010) 191 Cal.App.4th 676, 688.) The same is true of the

5

finding of failure to make substantial progress. (*V.C. v. Superior Court* (2010) 188 Cal.App.4th 521, 529, and see *infra*.)

Father first argues that the trial court erred in finding that return of A.A. to his custody would create a "substantial risk of detriment" to the child within the meaning of section 366.21, subdivision (e)(1). We disagree. Father overlooks the facts that the minor had been exposed to acts of violence by Father against his live-in girlfriend, *and* also spoke about, and showed physical signs of, actual physical abuse by Father. In light of his failure to address these issues through a formal program, the risk of harm to the minor if she were returned to his care is obvious.

Father then stresses the extent of the efforts he *did* make, which we acknowledge. He had successfully completed a substance abuse program and there was no evidence that he was currently drinking to excess. (There was also no evidence concerning testing after November 2015, or concerning any continued participation by Father in, e.g., Alcoholics Anonymous.) He had done a parenting class. However, as noted above, he had not even enrolled in a domestic violence class and his excuses for not having done so were not conclusively persuasive. The fact that Father had *previously* been through the system with respect to A.A., had regained custody after satisfactory participation, and then was responsible for creating serious risks to her again also indicates that he had not substantially benefitted from previous services and that his participation in this case should be carefully reviewed. (The previous case did not involve domestic violence.)

6

With respect to the claim that "clear and convincing" evidence does not support the finding that Father had failed to make substantial progress, this is not the standard to be applied by the reviewing court; even where a statute requires a finding to be supported by " 'clear and convincing' " evidence, the reviewing court simply searches for "substantial evidence." (*In re J.I.* (2003) 108 Cal.App.4th 903, 911.) And the argument is misplaced as well. Section 366.21, subdivision (e), merely requires a preponderance of the evidence to establish that return would be detrimental, and a failure to participate and make progress constitutes prima facie evidence of detriment. While "clear and convincing" evidence of a failure to participate and progress is required before the court may schedule a section 366.26 hearing for a child *under three* at the *first six-month* hearing (§ 366.21, subd. (e)(3)), that statute does not apply either to the minor A.A. or to the time frame in this case.[6] As we have found above, there is substantial evidence of such a failure to participate and progress.

We also agree that the minor appears fond of Father, but that does not eliminate the risk caused by Father's failure to deal with his domestic violence issues.

In summary, although Father did make some progress towards completing his reunification plan, with respect to the critical issues of abuse he made *no* progress, and as he had not even begun a domestic violence program of any kind (let alone the 52-week

---

[6] Subdivision (g)(1) of section 366.21 requires "clear and convincing" evidence that there is a substantial probability of return in six months to justify extending services at the 12-month hearing. But it does not require such evidence to support a finding that there is *not* such a probability.

program required by his probation), the trial court reasonably found there was both a current risk of detriment if the minor were returned to Father's custody, and that there was no substantial probability that she could be so returned within six months.

III

DISPOSITION

The petition is denied.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

McKINSTER
J.

We concur:

RAMIREZ
P. J.

CODRINGTON
J.

8