Filed 11/3/21  In re I.S. CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| In re I.S., a Person Coming Under the Juvenile Court Law. | |
| | D078887 |
| SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY, | |
| | (Super. Ct. No. J518904) |
| Plaintiff and Respondent, | |
| v. | |
| L.S., et al. | |
| Defendants and Appellants. | |

APPEAL from an order of the Superior Court of San Diego County, Marian F. Gaston, Judge.  Affirmed.

Marissa Coffey, under appointment by the Court of Appeal, for Appellant L.S.

Lauren K. Johnson, under appointment by the Court of Appeal, for Appellant I.S.

Lonnie J. Eldridge, County Counsel, Caitlin E. Rae, Chief Deputy

County Counsel, and Lisa M. Maldonado, Deputy County Counsel, for Plaintiff and Respondent.

In this juvenile dependency proceeding involving her seven-year-old son I.S., L.S. (Mother) appeals an order made at a combined six- and 12-month review hearing pursuant to Welfare and Institutions Code section 366.21.[1] At that hearing, the court determined there was a substantial risk of detriment to I.S. if he was returned to Mother's care and that the reunification services provided to Mother were reasonable. On appeal, Mother and I.S. contend that the juvenile court erred in not returning I.S. to her care because its finding of substantial risk of detriment was not supported by substantial evidence. I.S. also challenges the court's reasonable services finding, specifically focused on the failure of the San Diego County Health and Human Services Agency (Agency) to provide Applied Behavioral Analysis (ABA) services. Mother and I.S. join in each other's arguments.

Granting the appropriate deference, we conclude the juvenile court did not err in making its rulings. Although the Agency's efforts to enroll I.S. in ABA services were met with repeated delays, the evidence demonstrates that many of the impediments were beyond the control of the Agency and prevented I.S. from beginning ABA services until shortly before the review hearing. Without those services, the juvenile court reasonably concluded that Mother was not ready to resume custody of I.S. Although the circumstances of this case are far from ideal, the evidence supports the juvenile court's findings. Accordingly, we affirm the court's order.

---

[1] All further statutory references are to the Welfare and Institutions Code.

2

FACTUAL AND PROCEDURAL BACKGROUND[2]

In February 2020, the Agency petitioned the juvenile court under section 300, subdivision (a), on behalf of I.S., who was five years old at the time. The petition alleged that Mother physically abused I.S., causing substantial bruising. In the detention report, the Agency explained it received a report that I.S. returned to school with marks on his side after being absent for three days. When questioned, I.S. disclosed that Mother hit him with a rope. A child abuse expert examined his injuries and concluded they were indicative of physical abuse. The report also discussed prior incidents where it was claimed that Mother physically abused I.S. The current petition was the third dependency proceeding for I.S.; he had been returned to Mother's care after each of the prior two proceedings. When interviewed, Mother denied that she ever physically abused I.S.

At the detention hearing, the juvenile court found the Agency had made a prima facie showing that I.S. was a person described by section 300, subdivision (a), and ordered him detained. The court directed that services be provided and allowed for supervised visits.

In its jurisdiction and disposition report, the Agency noted that Mother had been diagnosed with a mild developmental disability, I.S. had reportedly been diagnosed with autism, and both Mother and I.S. were clients of the San

---

[2] Mother previously appealed the juvenile court's jurisdiction and disposition orders, which this court affirmed in an unpublished opinion. (*In re I.S.* (Jan. 26, 2021, D077949) [nonpub. opn.].) The factual and procedural history of this proceeding through the disposition hearing are detailed in that opinion and we focus our discussion on the background relevant to the issues raised on appeal.

Diego Regional Center.[3] In March 2020, the Agency provided referrals for Mother to receive a transit pass, attend a child abuse group, and take part in parenting education. Mother was already receiving independent living services and participating in individual therapy.

In an addendum report, the Agency explained that a social worker spoke with a Regional Center worker regarding "ABA services" for I.S. in which Mother would also participate. ABA, or Applied Behavioral Analysis, focuses on providing techniques to help address extreme behaviors. It was hoped that ABA services would assist Mother in working with I.S. to avoid extreme behaviors and to set daily routines.

Mother was in the process of being transferred to another Regional Center counselor and the Agency's social worker intended to follow up once the new counselor was assigned. The initial case plan included goals for Mother to participate in Child and Family Team (CFT) meetings, work with the Regional Center to enhance Mother's parenting skills, and complete a parenting education program.

In July 2020, the Agency sought approval from the court to provide psychotropic medication to I.S. In a report, a psychiatrist explained that due to "oppositional and aggressive behaviors" associated with I.S.'s autism diagnosis, he was at risk of losing his current foster home placement. The court granted the request despite Mother's opposition.

At a status hearing in August 2020, minor's counsel expressed concern that I.S. had not started ABA services due to an issue with insurance coverage and had also not been seeing a therapist. A social worker responded

---

[3] The Regional Center is a non-profit agency, funded and regulated by the state, tasked with providing services to persons diagnosed with developmental disabilities. (See *People v. Cuevas* (2013) 213 Cal.App.4th 94, 104, fn. 9.)

4

that due to I.S.'s autism diagnosis, regular therapy was not appropriate and he had been referred for specialized therapy. The Agency had been working on beginning ABA services, but I.S.'s current insurance denied coverage. The social worker informed the court that she was continuing to work on securing ABA services, but that the case was being reassigned to a new social worker soon.

In a September 2020 addendum report, the social worker detailed the repeated attempts to work with the Regional Center to secure ABA services. The newly-assigned social worker was still waiting for confirmation from the Regional Center regarding funding for ABA services.

At the jurisdiction and disposition hearing, the social worker reported that child welfare services could pay directly for ABA services, which could begin before I.S. was returned home. After hearing from the parties, the juvenile court sustained the allegations of the petition, found the Agency had made reasonable efforts to eliminate the need for removal of I.S., but that there was clear and convincing evidence that I.S. should continue to be removed from Mother's care. The court set a review hearing in six months.

In advance of the six-month review hearing, the Agency reported I.S. was receiving therapeutic services and the Agency had contacted an ABA service provider to enroll I.S., but learned there was a waitlist to begin services. Part of the delay was caused by I.S.'s current caregiver, who was "overwhelmed" and not willing to participate in the ABA assessment. The Agency decided to change his placement to ensure ABA services could be secured. To begin services, however, I.S. was required to participate in a 30-day assessment period and there would be additional delay after completion of the assessment to secure approval for the proposed services. The social worker opined that Mother was currently not able to safely parent I.S. and

5

that initiation of full ABA services would assist Mother to avoid her frustration that could lead to physical abuse. I.S. was eventually able to begin ABA services in January 2021.

The assigned social worker testified at a combined six-month and 12-month review hearing. He stated that when he was assigned this case in November 2020, there were several issues preventing I.S. from beginning ABA services. In addition to the payment issues, I.S. lacked the paperwork necessary to begin receiving the services. The ABA provider received the required paperwork in December 2020 or January 2021. Additionally, the ABA provider had a staffing shortage that resulted in a waitlist for new clients. The social worker considered finding another provider, but the current provider was located close to Mother's residence and would be more accessible to Mother given her reliance on public transportation. Additional billing issues caused delay between November 2020 and January 2021. Mother had also participated in other services and successfully completed all components of her case plan other than participating in ABA services.

At the conclusion of the hearing, the juvenile court found that returning I.S. to Mother's care would create a substantial risk of detriment, but that there was a substantial probability that I.S. would be returned to Mother's care before the 18-month review hearing. Regarding services, the court found that in the six to seven months before the hearing, the Agency had provided reasonable services.[4] It explained that since the jurisdiction hearing in September 2020, the Agency had provided reasonable services

---

[4] The juvenile court stated that it was making its finding under the heightened "clear and convincing evidence" standard of proof. The Agency contends that the court should have applied a lower standard of proof. Although the standard of proof has an effect on our review, we conclude that the evidence supports affirmance under either standard.

6

individually tailored to I.S. and his Mother.  It also noted that in that time frame, the social worker identified and overcame the barriers to I.S.'s enrollment in ABA services, which was an appropriate "next step" following Mother's completion of her other classes.

Reviewing the specific details of the Agency's efforts to secure ABA services, the court found that "the Agency did what it needed to do." However, the court explained that if it considered the entire time period since I.S. was removed from Mother's care and the initiation of the proceeding, "obviously the Agency dropped the ball.  There has been no evidence really presented on why that happened.  But for several months it does appear as though the ABA services and the need for those was being neglected.  No one was lining that up for several months at a time even if the intention had been to stagger the services."  The court concluded that Mother was doing a "great job" and set an 18-month review hearing.

Both Mother and I.S. appealed.

DISCUSSION

I

Both Mother and I.S. contend the juvenile court erred in not returning I.S. to Mother's care.  I.S., joined by Mother, also contends the court erred in finding the Agency provided reasonable services.  Considering these arguments under the proper standard of review, we see no basis for reversal.

We review both the finding of detriment and a reasonable services finding for substantial evidence.  (*V.C. v. Superior Court* (2010) 188 Cal.App.4th 521, 529; *Angela S. v. Superior Court* (1995) 36 Cal.App.4th 758, 762.)  Under this standard of review, "this court must view the evidence in a light most favorable to the respondent.  We must indulge in all legitimate and reasonable inferences to uphold the verdict.  If there is substantial

7

evidence supporting the judgment, our duty ends and the judgment must not be disturbed." (*In re Misako R.* (1991) 2 Cal.App.4th 538, 545 (*Misako R.*); see also *Katie V. v. Superior Court* (2005) 130 Cal.App.4th 586, 598.)

"The purpose of the California dependency system is to protect children from harm and to preserve families when safe for the child. (§ 300.2; *In re Dakota H.* (2005) 132 Cal.App.4th 212, 228.) The focus during the reunification period is to preserve the family whenever possible. [Citation.] Until services are terminated, family reunification is the goal and the parent is entitled to every presumption in favor of returning the child to parental custody. (§§ 366.21, 366.22; [citation].)" (*Tracy J. v. Superior Court* (2012) 202 Cal.App.4th 1415, 1424 (*Tracy J.*).)

*1. Return to Mother's Custody*

At the six-month review hearing, the court is required to return a child to parent's care "unless the Agency proves, by a preponderance of the evidence, that return would create a substantial risk of detriment to the child's physical or emotional well-being. (§ 366.21, subd. (e).)" (*In re Mary B.* (2013) 218 Cal.App.4th 1474, 1483 (*Mary B.*).) Viewing the evidence in the light most favorable to the juvenile court's ruling, as we must, we conclude the court properly found that returning I.S. to Mother's physical custody would create a substantial risk of detriment.

To meet its burden, the Agency focused on an incident during a visit between Mother and I.S. approximately one month before the review hearing. At that visit, I.S. had an emotional outburst and, rather than calming I.S., Mother walked away and did not return for several minutes, leaving a visitation coach to care for I.S. Mother returned and spoke to I.S. in a " 'non-calm tone manner' " and then left again. After she returned, she became upset and called I.S. a "liar" after he stated that Mother hit him. I.S. was

8

hiding under a bench and Mother pulled him out by his arm and accused him of making her late for a medical appointment. The Agency cited this visit as evidence that Mother, despite her completion of many reunification services, was not ready to parent I.S. independently and "needs to continue practicing parenting techniques she is learning to manage her frustration with [I.S.]." The juvenile court cited this incident as supporting the finding of detriment, explaining that Mother was "still learning how to respond to a child having a tantrum without using physical discipline."

On appeal, Mother and I.S. contend that this incident cannot, standing alone, support a finding of detriment. However, this was not an isolated incident, and the juvenile court appropriately viewed it within the broader context of Mother's past conduct. (*In re S.O.* (2002) 103 Cal.App.4th 453, 461.) Given the similarities between the recent incident and Mother's past behavior necessitating repeated dependency proceedings, the juvenile court could reasonably conclude that despite Mother's substantial progress, her improvement by the time of the hearing was not sufficient to eliminate the conditions that led to I.S.'s removal.

Additionally, although I.S. had begun his initial participation in ABA services, the anticipated services had not been fully implemented. As both Mother and I.S. recognize in the context of their other contention on appeal, ABA services were a central component of the case plan. Thus, the juvenile court could reasonably conclude it was not safe to return I.S. to Mother's care until additional progress had been made by fully implementing the ABA services.

Mother compares her situation to the circumstances of *In re E.D.* (2013) 217 Cal.App.4th 960, in which the Court of Appeal reversed a juvenile court's finding of detriment unsupported by *any* evidence beyond the court's general

9

stated preference that the minor remain in his current placement. (*Id.* at pp. 965-966.) But the juvenile court did rely on evidence, specifically Mother's actions at a recent visit and her prior actions, to support its conclusion. Another case cited by Mother, *Georgeanne G. v. Superior Court* (2020) 53 Cal.App.5th 856 (*Georgeanne G.*), is also distinguishable. In *Georgeanne G.*, the court held that a juvenile court may not rely exclusively on a parent's lack of "insight" into the circumstances necessitating the minor's removal as a basis for finding a risk of detriment. (*Id.* at pp. 868-870.) And because Mother continued to deny that she ever physically abused I.S., the Agency cited this lack of "insight" as a basis for finding a risk of detriment if I.S. was returned to her care. But unlike in *Georgeanne G.,* here the juvenile court did *not* rely on this factor in reaching its determination.

Mother and I.S. point to other evidence in the record supporting the conclusion that Mother's parenting skills had improved due to the great strides she made in completing the services included in her case plan. The Agency does not dispute that evidence, the juvenile court recognized Mother's progress, and we likewise acknowledge and applaud it. However, under our deferential review of the juvenile court's order, it is not our role to substitute our judgment for that of the juvenile court or to reweigh the evidence. (*In re J.P.* (2019) 37 Cal.App.5th 1111, 1123.) Where, as here, there is sufficient evidence to support the juvenile court's determination, we must conclude that the court did not abuse its discretion.

2. *Reasonable Services*

We similarly conclude substantial evidence supports the juvenile court's finding that the Agency provided reasonable services. Reasonable services during the reunification period are statutorily required, though there is "no constitutional 'entitlement' to these services." (*In re Baby Boy H.*

(1998) 63 Cal.App.4th 470, 475.)  The purpose of these services—a critical component of the reunification plan—is "to overcome the problem that led to removal in the first place." (*Blanca P. v. Superior Court* (1996) 45 Cal.App.4th 1738, 1748.)

"At each review hearing, if the child is not returned to the custody of his or her parent, the juvenile court is required to determine whether reasonable services that were designed to aid the parent in overcoming the problems that led to the initial removal and the continued custody of the child have been offered or provided to the parent . . . .  (§ 366.21, subds. (e), (f).)" (*In re J.P.* (2014) 229 Cal.App.4th 108, 121.)  In making its determination, the juvenile court considers the appropriateness of services offered, the extent to which the agency facilitated utilization of those services, and the extent to which the parent availed him or herself of the services provided.  (*In re Riva M.* (1991) 235 Cal.App.3d 403, 414.)

"The standard is not whether the services provided were the best that might be provided in an ideal world, but whether the services were reasonable under the circumstances." (*Misako R., supra*, 2 Cal.App.4th at p. 547.)  Reunification services "should be tailored to the particular needs of the family." (*Tracy J., supra*, 202 Cal.App.4th at p. 1425.)  The adequacy of the plan and the Agency's efforts must be judged according to the circumstances of the particular case.  (*In re Taylor J.* (2014) 223 Cal.App.4th 1446, 1451.)

"To support a finding that reasonable services were offered or provided to the parent, 'the record should show that the supervising agency identified the problems leading to the loss of custody, offered services designed to remedy those problems, maintained *reasonable* contact with the parents during the course of the service plan, and made *reasonable* efforts to assist

11

the parents in areas where compliance proved difficult. . . .' " (*In re A.G.* (2017) 12 Cal.App.5th 994, 1001.)

I.S. does not contend that the Agency failed to identify the problems leading to the loss of custody. The Agency reasonably determined that Mother's inability to safely parent I.S. without allowing her frustration to lead to physical abuse necessitated services. Similarly, appellants do not dispute that ABA services to address I.S.'s behavior and Mother's ability to respond to that behavior were a reasonable component of the reunification case plan. Instead, Mother and I.S. challenge the reasonableness of the Agency's efforts to secure ABA services.

As the juvenile court recognized, the Agency's early efforts to enroll I.S. encountered obstacles. The record discloses that the Agency first inquired about ABA services in April 2020, but then encountered delays. After the jurisdiction and disposition hearing in September 2020, at which the court ordered the Agency to provide reunification services, the Agency was able to locate an ABA service provider by November and I.S. had begun his initial assessment with the ABA service provider in January 2021.

Although the delay in securing services is at best unfortunate and perhaps even troubling, the record does not support that the delay was necessarily unreasonable given the entire circumstances of the case. The record demonstrates that many of the delays in providing ABA services were caused by issues beyond the direct control of the Agency, which worked diligently in the period after the jurisdiction and disposition hearing to overcome the obstacles.

In *T.J. v. Superior Court* (2018) 21 Cal.App.5th 1229, 1242, the court held that placing a parent on a six- to 12-month waiting list caused an unreasonable delay. Here, the Agency located an ABA service provider

12

within one to two months after the jurisdiction and disposition hearing, and I.S. was on a two-month waitlist. Although the delays may have been unexpected and ideally would have been overcome sooner, the juvenile court is in the best position to understand the practical realities in its own jurisdiction and it could appropriately find that the Agency made reasonable efforts to overcome the difficulties in providing services to I.S. and Mother. (See *In re T.W.* (2017) 9 Cal.App.5th 339, 348-349 [" 'The effort must be made to provide reasonable reunification services in spite of difficulties in doing so or the prospects of success.' "].)

I.S. contends that when the Agency learned there was a waitlist to obtain ABA services with the identified provider, it should have sought out an alternative provider. We cannot say, however, that was the only reasonable course of action. The Agency consulted with a Regional Center coordinator, who had already explored other provider options for I.S., but concluded that it would be beneficial to have a provider in close proximity to Mother's residence to allow her to fully participate. It is significant that the Agency intended ABA services would continue after I.S. was reunited with Mother and would require multiple sessions a week. Because the Agency was unaware of any other ABA services located near Mother, it determined it was in I.S.'s best interests to wait for an opening with the identified provider.

When considering the reasonableness of the services provided by the Agency, we must consider the Agency's actions in the context of the specific circumstances presented in each case. (*Misako R.*, *supra*, 2 Cal.App.4th at p. 547.) Although the circumstances here present a close case, the deferential standard of review requires us to uphold the juvenile court's determination that the Agency provided reasonable services to Mother.

DISPOSITION

The order is affirmed.

DATO, J.

WE CONCUR:

HUFFMAN, Acting P. J.

HALLER, J.

14